UNITED STATES, Appellee,

v.

Wilfred J. HART a/k/a "Jay Hart,"
Defendant, Appellant.

Nos. 88–2212, 88–2213.

United States Court of Appeals,
First Circuit.

Heard April 3, 1991.
Decided May 16, 1991.

Michael Burke with whom Epstein, Burke, MacIntosh & DeVito, P.A. were on brief, Concord, N.H., for defendant, appellant.

Margaret D. McGaughey, Asst. U.S. Atty., with whom Richard S. Cohen, U.S. Atty., Portland, Me., and Jay P. McCloskey, Asst. U.S. Atty., were on brief, Bangor, Me., for appellee.

Before CAMPBELL, Circuit Judge, BOWNES, Senior Circuit Judge, and SELYA, Circuit Judge.

BOWNES, Senior Circuit Judge.

This appeal arises from a criminal conviction in which appellant-defendant Wilfred Hart, Jr., also known as Jay Hart, was found guilty on thirteen counts of conspiring to possess and distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 846 and 18 U.S.C. § 2.[1] Hart's conviction on two separate conspiracy counts resulted in two consecutive sentences of fifteen years each. He now raises the following issues on appeal: 1) whether he was denied effective assistance of counsel in violation of the sixth amendment; 2) whether the district court's granting of his post-conviction motion entitled "Lack of Jurisdiction for Sentencing" resulted in a finding of lack of jurisdiction which invalidated his subsequent sentence; and 3) whether his conviction on separate counts of conspiracy fractionalized a single conspiracy, resulting in double punishment in violation of the Double Jeopardy Clause of the fifth amendment.

## I. BACKGROUND

On January 15, 1986, a secret indictment was returned against Hart in the district of Maine regarding the charges on which he was later convicted. On April 30, 1986, Hart was arrested in Fort Stockton, Texas, on state charges of possession of 400 grams of cocaine. While released on bail on the Texas charges and prior to any trial or imprisonment, Hart agreed to be removed to Maine where he appeared before a United States magistrate on July 11, 1986. Hart was charged with supplying cocaine to a number of dealers in central Maine during two different time periods between May of 1984 and January of 1985. The first conspiracy from May to October of 1984 principally involved Hart, Norman Grenier, Susan Pierce, and Hart's brother Peter. The second conspiracy started after Grenier was killed in December 1984; Hart allegedly dealt with Michael Massey and others until their arrests in January 1985. Pierce and Massey, as well as Hart's brother Peter, testified for the government at Hart's trial.

A government motion to have Hart detained until trial was granted on July 17, 1986. From that date until the end of his trial, Hart was represented by nine different attorneys[2] and filed a flood of motions,

---

1. These statutes read in pertinent part:
 **21 U.S.C. § 841 Prohibited acts A Unlawful acts**
 (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
 (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance;

 • • • • •

 **21 U.S.C. § 846 Attempt and conspiracy**
 Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the subject of the attempt or conspiracy.

**18 U.S.C. § 2 Principals**
 (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
 (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

2. From the record it would appear that Hart's first seven lawyers were retained by the defendant, most for very brief periods. For example, Hart's local counsel, William Palmer, who represented him before the United States magistrate on July 11, 1986, filed a motion to withdraw on August 11, 1986. Attorney Richard S.

many pro se, including nine motions, all denied, which sought to dismiss his indictment because the Interstate Agreement on Detainers Act (IAD) had allegedly been violated. He also filed fifteen pro se petitions for writs of habeas corpus or related civil causes of action, all of which were denied.

On March 23, 1987, the government filed a third and final superseding indictment containing the fourteen counts on which Hart was tried. Following a torrent of new pro se motions and the withdrawal of a number of Hart's attorneys, the district court on December 23, 1987, held a hearing to address Hart's request to represent himself and ultimately ordered a hearing on his mental competency. Psychological evaluations held at FCI Butner, North Carolina, in January and February of 1988 could not be completed because of Hart's intransigence; the issue of competency was mooted by the court on March 23, 1988. In the fourteen-month period between the third indictment and his trial, Hart deluged the court with at least sixty-six different motions, most of them pro se.

In April 1988 the court appointed two University of Maine Law School professors to represent Hart at his trial, which began on May 23. At trial Hart took the stand in his own behalf against the advice of his counsel. He claimed that he was supplying the six government witnesses, all confessed cocaine users and dealers, with incense called Aroma, not cocaine. The government rested without cross-examining Hart. It did, however, move to dismiss Count VII.[3] A jury convicted Hart of the remaining thirteen counts. Prior to sentencing, Hart submitted a pro se motion entitled "Lack of Jurisdiction for Sentencing with Federal Question," which the court granted. Hart now claims that by granting the

motion, the court divested itself of jurisdiction over him. The issues on appeal are presented in part by Hart's eleventh attorney, in part by his pro se motion.

## II. SIXTH AMENDMENT CLAIMS

■ Hart's claim of ineffective assistance of counsel has been presented for the first time on appeal. First Circuit precedents abound holding that an ineffective assistance claim should be decided initially by the district court. *See, e.g., United States v. Arango–Echeberry*, 927 F.2d 35, 39 (1st Cir.1991) (issue not to be decided initially on appeal); *United States v. Latorre*, 922 F.2d 1, 9 (1st Cir.1990) ("Except in unusual circumstances, we will not decide a claim of inadequate representation that has not been first made to the district court."); *United States v. Sanchez*, 917 F.2d 607, 612–13 (1st Cir.1990) ("two sound reasons" for rule are trial judge's optimal position to assess defense counsel and frequent need to address factual issues in ineffective assistance claims) (citations omitted), *cert. denied*, — U.S. —, 111 S.Ct. 1628, 113 L.Ed.2d 725 (1991). *See also United States v. Lema*, 909 F.2d 561, 565 (1st Cir.1990) (denying evidentiary hearing on whether claim of ineffective assistance was "newly discovered" for purposes of appeal).

■ We find no extraordinary circumstances compelling our consideration of the ineffective assistance claim before it has been scrutinized by the district court. We do, however, want to preclude any further discussion of this issue before the Job-like district judge who has been afflicted with this case.

■ Under the required two-prong test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to

---

Emerson entered his appearance on August 26, 1986, and his September 12 motion to withdraw was granted on September 29, 1986. The attorneys who represented Hart at trial, on the basis of which representation he claims ineffective assistance of counsel, were court-appointed. As of May 2, 1991, Hart and his second appellate lawyer have parted, and Hart has requested once more to represent himself.

**3.** Count VII of the third superceding indictment alleged that "[i]n or about September, 1984, in the District of Maine," Hart and Ron Burns "did knowingly and intentionally distribute approximately one (1) gram of cocaine" to William Christiansen. During trial on May 27, 1988, the government moved to dismiss this charge as overlapping with others. The court granted the motion.

violate the sixth amendment, counsel's assistance must be both deficient and prejudicial. *Id.* at 687, 104 S.Ct. at 2064. *Strickland* also teaches that the standard for attorney performance is that of reasonably effective assistance. *Id.* at 687–90, 104 S.Ct. at 2064–66. The First Circuit has consistently required a defendant-appellant to demonstrate both his attorney's failure to meet this objective standard of reasonableness and "that but for this ineffective assistance the outcome of the trial would have been different." *United States v. Carbone,* 880 F.2d 1500, 1501 (1st Cir. 1989), *cert. denied,* — U.S. —, 110 S.Ct. 1131, 107 L.Ed.2d 1037 (1990). *See also Bryant v. Vose,* 785 F.2d 364, 369 (1st Cir.) (In light of other evidence, defense counsel's failure to call witness did not create " 'reasonable probability' " that jury's conclusion would have been different.) (quoting *Strickland, supra,* 466 U.S. at 694, 104 S.Ct. at 2068), *cert. denied,* 477 U.S. 907, 106 S.Ct. 3281, 91 L.Ed.2d 570 (1986); *United States v. Bosch,* 584 F.2d 1113, 1121 (1st Cir.1978) (endorsing reasonably competent standard as guaranteeing effective, not errorless, representation).

Of particular pertinence here is *Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). In *Barnes* the Court held that in light of *Anders v. California,* 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967), which required an advocate to "support his client's appeal to the best of his ability," defense counsel need not raise every non-frivolous claim advanced by his client:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the very goal of vigorous and effective advocacy that underlies *Anders.*

*Jones,* 463 U.S. at 754, 103 S.Ct. at 3314.

In addition, several First Circuit cases have upheld counsel's right to ignore frivolous claims pressed by clients. In *United States v. Wright,* 573 F.2d 681 (1st Cir.), *cert. denied,* 436 U.S. 949, 98 S.Ct. 2857, 56 L.Ed.2d 792 (1978), we responded bluntly to a defendant's charge of ineffective assistance: "Counsel is not required to waste the court's time with futile or frivolous motions." *Id.* at 684. *See also Bosch,* 584 F.2d at 1121–22. Surely Hart's requests for his counsel to track down and present as alibi witnesses "that person" or "certain persons" never named or located, even by the time of his sentencing hearing, could be deemed frivolous. Moreover, his trial counsel did accede to Hart's request to testify despite her concerns about his credibility, even that he might perpetrate a fraud on the court. We conclude, without difficulty, that Hart's many attorneys—in particular, the two who represented him at trial—have represented him with both competence and patience. Hart's sixth amendment claims can be dismissed in perpetuity.

## III. CLAIM THAT DISTRICT COURT FOUND LACK OF JURISDICTION

 This claim is based in the court's granting of a pro se motion entitled "Motion to Chief Judge Conrad K. Cyr on Lack of Jurisdiction for Sentencing with Federal Question." The so-called federal question was Hart's tenth attempt to argue that he was unlawfully held under the Interstate Agreement on Detainers Act. The substance of the motion prayed

> that Judge Cyr will uphold his imposed duty under the Interstate Agreement on Detainers Act (AID Act) of Congress and not impose a false imprisonment and the Detainee presents a federal question pursuant to 28 U.S.C. Section 1331. Jurisdiction is properly asserted for IAD relief pursuant to 18 U.S.C., Appendix III, IAD Act, Section 5.

There is no suggestion in the body of the motion that the court lacked jurisdiction.

The court did not relinquish jurisdiction for several obvious reasons. First, as even Hart's attorney states in his brief to this court, "The order was never enforced by the Court." If the district court were to have denied jurisdiction, which is unlikely after a long and contentious trial, it surely would have implemented the order by some legal analysis beyond a single word— "Granted." It also would have arranged to

implement the order and release Hart. Second, the court scheduled Hart's sentencing in the following month, November 10, 1988, and continued to exercise jurisdiction in the case. Moreover, at the sentencing hearing, neither Hart nor either of his attorneys challenged the jurisdiction of the court or its right to impose sentence. They participated fully in the proceedings. Hart himself addressed the court at length four different times during sentencing with the permission of the very judge whom he now claims had relinquished jurisdiction over his case. Hart never mentioned, much less questioned, the court's jurisdiction over him at sentencing.

Finally, prolific case law across the circuits maintains that a title given to a motion or an appellant's version of any legal action does not control its meaning. *See, e.g., Henry v. Connolly*, 743 F.Supp. 922 (D.Mass.) (Mischaracterization of a ruling by an appellant does not control.), *aff'd*, 910 F.2d 1000 (1st Cir.1990). *See also Hasbrouck v. Texaco*, 879 F.2d 632, 635 (9th Cir.1989) ("The nomenclature the movant uses [to title a motion] is not controlling."); *Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 527 (9th Cir.1983); (Court, not appellant, decides whether motion is appropriate for relief requested.); *In re Wine Boutique, Inc.*, 117 B.R. 506, 509 (Bankr. W.D.Mo.1990) ("Absent an appropriate description, it is within the discretion of the Court to deny or strike the [misnamed] motion.") (footnote omitted).

Hart's mistitled motion merely captions another IAD appeal. The district court had previously held that the IAD Act did not apply to Hart at any stage of his long legal process. Enacted in 1970, the IAD provides a speedy trial for a person imprisoned in one jurisdiction and removed to another to face different charges. It states in pertinent part in Article III:

> *Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State,* ... [and] *there is pending in any other party State any untried indictment,* ... *he shall be brought to trial within one hundred and eighty days after he*

shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition....

18 U.S.C.App. § 2 (West Supp.1989) (emphasis added).

Although Hart had been arrested for cocaine possession in Texas, he had been neither tried, convicted nor imprisoned there. In fact, he was out on bail after his arrest. Hence, the plain language of the statute makes it inapplicable to him. We have held: "The terms of the Agreement apply exclusively to prisoners who are actually serving their sentences, and not to pretrial detainees." *United States v. Currier*, 836 F.2d 11, 16 (1st Cir.1987). This conclusion has been emphasized even when an appellant was in custody awaiting trial but "not serving a 'term of imprisonment' within the meaning of the statute." *United States v. Reed*, 620 F.2d 709, 711 (9th Cir.1980). Hart has no standing to appeal under the IAD.

As a pro se litigant who filed an avalanche of motions, frequently replicating each other, Hart was given to grandiloquent and sometimes incomprehensible titles and statements in his pleadings. The prayer of his motion only asked that the court uphold its "imposed duty" under the Interstate Agreement on Detainers Act "and not impose a false imprisonment." The court could hardly refuse such a request. Moreover, even if the court erred in granting Hart's confusing motion, it was harmless error. Despite its title, the body of the motion did not attack the jurisdiction of the court. Jurisdiction was properly assumed by the court and acceded to by the defendant at sentencing. The IAD clearly did not apply.

## IV. DOUBLE JEOPARDY CLAIMS

■ Hart claims in his separate pro se motion on appeal that his conviction on two different conspiracy counts, Counts I and

XII of the third superseding indictment,[4] fractionalized a single conspiracy and resulted in multiple punishments in violation of the Double Jeopardy Clause of the fifth amendment. Hart received consecutive prison terms of fifteen years on each count.

There can be no question that the Double Jeopardy Clause " 'protects against multiple punishments for the same offense.' " *Albernaz v. United States*, 450 U.S. 333, 343, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275 (1981) (citation omitted). But the Court also stressed that a single conspiracy with different goals, shifting personnel, involving different statutes, can result in separate punishments for the same conspirator. "Where Congress intended, as it did here, to impose multiple punishments, imposition of such sentences does not violate the Constitution." *Id.* at 344, 101 S.Ct. at 1145 (footnote omitted).

*Albernaz* involved a single conspiracy with dual objectives: to import and distribute drugs (marijuana). Hart's cocaine conspiracies were sequential and separate. The charges in *Albernaz* were brought under separate statutory provisions, invoking the test enunciated in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932): "whether each provision requires proof of an additional fact which the other does not." *Id.* at 304, 52 S.Ct. at 182. Conversely, the two conspiracy counts I and XII, on which Hart was convicted, were brought under the same statutes. A recent Supreme Court case has refined *Blockburger* and clarifies Hart's double jeopardy claims here. In *Grady v. Corbin*, — U.S. —, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), the Court held that *subsequent* prosecution is barred if "the

offenses have identical statutory elements or that one is a lesser included offense of the other...." *Id.* at 2090. The First Circuit has also held, following *Grady*, that this double jeopardy bar pertains "only to successive prosecutions" and "not to multiple punishment cases." *United States v. Ortiz–Alarcon*, 917 F.2d 651, 653 (1st Cir. 1990). Hart's prosecution was not successive, and it was a multiple punishment case. The fact that both counts against Hart implicate the same statutory violations does not in itself create a double jeopardy bar. Each drug conspiracy charged involved proof of the existence of an agreement to possess a controlled substance with intent to distribute, Hart's knowledge of such an agreement and his voluntary participation in it. Hart could have been tried separately for the two similar but separate conspiracies.

A recent First Circuit case outlines in detail five factors to be utilized in determining whether two charged conspiracies constitute the same offense for purposes of double jeopardy. In *United States v. Gomez–Pabon*, 911 F.2d 847 (1st Cir.1990), *cert. denied, sub nom. Guzman v. United States*, — U.S. —, 111 S.Ct. 801, 112 L.Ed.2d 862 (1991), defendant Gomez was given two consecutive sentences on two different counts brought under the same statutes, a situation precisely parallel to Hart's. The Court examined these five factors: 1) time periods of the conspiracies, with an overlap tending to support a single conspiracy; 2) the personnel involved, again with "significant overlap" denoting a single conspiracy; 3) location(s), with identical place(s) supporting a single conspiracy; 4) evidence of overt acts, where the

---

**4.** Count I reads in pertinent part:
Beginning in or about May of 1984 and continuing up to October of 1984, in the District of Maine and elsewhere
WILFRED HART, JR., a/k/a "Jay" Hart PETER HART and
RON BURNS, a/k/a "Roast Beef" defendants herein, did wilfully, knowingly, and unlawfully conspire, combine, confederate and agree together and with Norman Grenier and others to commit an offense or offenses ... to knowingly and intentionally pos-

sess with intent to distribute and to knowingly and intentionally distribute cocaine....
Count XII reads in pertinent part:
Beginning in or about December, 1984, and continuing to January, 1985, in the District of Maine and elsewhere
WILFRED HART, JR., a/k/a "Jay" Hart defendant herein, did wilfully, knowingly and unlawfully conspire ... with Michael Massey and others to commit an offense or offenses ... to knowingly and intentionally possess with intent to distribute and to knowingly and intentionally distribute cocaine....

same acts would denote a single conspiracy; and 5) statutory provisions, with the same statutes suggesting possible overlap. *Id.* at 860–61.

In Hart's case, four of the five determinants reveal no overlap. First, there is no overlap in time between the two charged conspiracies for which Hart was convicted. Count I extended from May to October, 1984. Count XII spanned December 1984 to Massey's arrest in January 1985. Second, the parties named in each indictment were completely different, except for Hart. Third, the first conspiracy took place at specific sites in Maine, in Rhode Island and in Miami, Florida. The second conspiracy was limited to different sites in central Maine. Fourth, while similar in nature to the extent that each conspiracy dealt with cocaine deals, the evidence presented by six government witnesses revealed different transactions in different places with different people. Finally, the overlap of statutory provisions for each count does not belie the separateness of the conspiracies established by the first four factors. We conclude that Hart was not subjected to double jeopardy by his consecutive sentences arising from his simultaneous conviction on the two separate and distinct conspiracy counts.

The verdict of the district court must be and is *Affirmed.*