USCA1 Opinion

 

 August 28, 1992 [NOT FOR PUBLICATION] ___________________ No. 92-1654 UNITED STATES OF AMERICA Plaintiff, Appellee,, v. NELSON MANTECON ZAYAS, Defendant, Appellant. __________________ No. 92-1879 IN RE: NELSON MANTECON ZAYAS, Petitioner. ___________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Raymond L. Acosta, U.S. District Judge] ___________________ ___________________ Before Torruella, Cyr and Stahl, Circuit Judges. ______________ ___________________ J.C. Codias on brief for appellant. ___________ Robert S. Mueller, III, Assistant Attorney General, Mary Lee ______________________ ________ Warren, Chief, Hope P. McGowan and William H. Kenety, Attorneys, ______ _______________ _________________ Narcotic and Dangerous Drug Section, Criminal Division, on brief for appellee. __________________ __________________ Per curiam. These matters concern (though, as we will __________ explain, they do not directly challenge) the district court's denial of Nelson Mantecon Zayas' motion to dismiss his indictment. In September 1991 Mantecon was indicted, along with thirty-eight co-defendants, in the District of Puerto Rico. The superseding Puerto Rico indictment charged him with one count of conspiracy to possess, with intent to distribute, large quantities of marijuana and cocaine, and with seventeen substantive drug offenses involving the importation and possession of those drugs. Trial on these charges is scheduled to begin in September 1992. Previously, in 1990, Mantecon had been indicted with eleven co-defendants on drug charges in the Southern District of Florida. The second superseding Florida indictment charged him with one count of conspiracy to import marijuana and cocaine, and two counts of attempting to import cocaine. Mantecon was recently tried on these charges. On September 27, 1991, Mantecon filed a motion to dismiss the Puerto Rico indictment. His contention was that the indictment violated the Double Jeopardy Clause of the Fifth Amendment by charging him with the "same offenses" for which he had already been indicted in Florida. On October 21, the government opposed the motion. On November 21, the district court denied the motion. On December 3, Mantecon filed a "reply" to the government's opposition. On December -2- 9, he filed a motion to reconsider the denial of his motion to dismiss. In the motion, Mantecon's attorney stated that he had not received a copy of the government's opposition until November 15, and that he had filed the reply memo "promptly" on November 21. The latter statement was untrue, and it created the false impression that the reply memo and the order had crossed paths through no fault of Mantecon. The motion asked the court to reconsider its denial of the motion to dismiss in light of the arguments made in the reply memo. At length, the district court discovered that Mantecon's attorney had in fact not filed the reply memo until almost two weeks after the November 21 order issued. In an order dated February 11, 1992, the court therefore denied the motion to reconsider on the grounds that the reply memo (a) was untimely, and (b) had been filed without the court's permission, as required by Local Rule 311.7.1 Mantecon appealed the denial of the motion to reconsider (No. 92- 1654),2 and later filed a petition for a writ of "mandamus" ____________________ 1. The court also observed that, even if it were to consider the reply memo, it would still deny the motion because the Florida and Puerto Rico indictments were factually distinct, and because the issue of double jeopardy was not ripe for disposition when both cases were still in their pre-trial stages. 2. Mantecon did not file a notice of appeal until May 8, 1992, well past the ten-day deadline for filing appeals in criminal cases, see Fed. R. App. P. 4(b), and beyond even the ___ additional thirty-day "bubble" in which extensions for -3- (No. 92-1879) ordering the district court not to try him on the Puerto Rico charges during the pendency of the appeal. We now affirm the denial of the motion to reconsider, and deny Mantecon's petition for a writ. I _ The scope of our review is narrow. We have no occasion to consider the denial of the underlying motion to dismiss the indictment because Mantecon never filed a notice of appeal from that decision. In criminal cases, as in civil cases, it is true that the timely filing of a motion to reconsider will render the underlying order "nonfinal for purposes of appeal for as long as the [motion] is pending." United States v. Dieter, 429 U.S. 6, 8 (1976) (per curiam). _____________ ______ Thus, if the defendant files a timely motion to reconsider, ______ he need not immediately appeal the underlying order, and his ____________________ excusable neglect can be made. Id. Mantecon says that his ___ notice was timely nonetheless because (a) the district court failed to notify him of the denial of his motion to reconsider, and (b) after he finally learned of the denial, in late April, the district court gave him "permission" to file an appeal. It is not at all clear to us that the district court actually granted the "permission" Mantecon describes, and even less clear that the district court had the power to do so. But, we need not answer these questions because, as we will explain, the appeal is otherwise without substance. Whether we dismiss for lack of jurisdiction, or affirm on the merits, "the effect is the same. It follows that there is no need to decide the theoretical question of jurisdiction in this case." Norton v. Mathews, 427 U.S. 524, ______ _______ 532 (1976). -4- subsequent appeal from the denial of the motion to reconsider will preserve his challenges to the initial decision. On the other hand, if the motion to reconsider is untimely, then it has no effect on the need to file or time for filing a notice of appeal from the underlying order. See Browder v. ___ _______ Director, Dept. of Corrections of Illinois, 434 U.S. 257, _____________________________________________ 264-65 (1978). The defendant must, if he intends to challenge the initial decision, file a timely notice of appeal directly from it. A motion to reconsider in a criminal case is timely if "filed within the original period for review." Id. at 268 ___ (quoting United States v. Healy, 376 U.S. 75, 78 (1964)). ______________ _____ Because a criminal defendant has ten days in which to file a notice of appeal, Fed. R. App. P. 4(b), his motion to reconsider is timely only if filed within ten days. United ______ States v. Lefler, 880 F.2d 233, 234-35 (9th Cir. 1989). Here, ______ ______ the motion to reconsider was untimely because the district court entered its denial of the motion to dismiss on November 21, 1991, and Mantecon did not file the motion to reconsider until December 9, 1991 -- eighteen days later. And, since Mantecon did not file a notice of appeal within ten days of the November 21 order denying his motion to dismiss, he has forfeited his right to review of that order. On appeal we can assess only the propriety of the district court's decision to deny the motion to reconsider. -5- Because the motion to reconsider asked the district court to look at the reply memo, the issue on appeal is whether the district court abused its discretion in refusing to do so. Id. ("Denial of a motion for reconsideration is ___ reviewed for abuse of discretion."). Here, the reply memo was late (i.e., filed after the district court had issued its decision to deny the underlying motion to dismiss), and it was filed without the court's permission as required by local rule. The motion to reconsider also was late, and it contained a false averment (i.e., that Mantecon had submitted his reply memo "promptly"). Any one of these facts would have justified the district court's decision to deny the motion to reconsider. In combination they make the denial unassailable. II __ Even if this appeal gave us an opportunity to review the merits of the underlying motion to dismiss the indictment, we could find no basis for disturbing the district court's denial. The Double Jeopardy Clause provides that no person shall be twice put in jeopardy for the "same offense." Mantecon contends that the Florida and Puerto Rico conspiracy charges reflect but a single criminal scheme which the government has artificially sundered and successively -6- prosecuted. See North Carolina v. Pearce, 395 U.S. 711, 717 ___ ______________ ______ (1969) (Double Jeopardy Clause protects against, among other things, successive prosecutions for one crime). In order to determine "whether two charged conspiracies constitute the same offense for purposes of double jeopardy," United States v. Hart, 933 F.2d 80, 85 (1st Cir. 1991), we _____________ ____ have in the past examined "the relationship of the charged (multiple) conspiracies to one another in terms of factors such as the times when the relevant activities transpired; the locations at which the activities occurred; the identities of the persons involved; the co-conspirators' ends; the means used to achieve those ends; and the similarities (or differences) in the evidence used to prove the two conspiracies." United States v. David, 940 F.2d 722, _____________ _____ 734 (1st Cir. 1991). See also United States v. Hart, 933 _________ _____________ ____ F.2d at 85-86 (setting out five-factor test); United States _____________ v. Gomez-Pabon, 911 F.2d 847 (1st Cir. 1990)). We can ___________ consider "anything [in the record] that seems relevant" to these factors. United States v. Thomas, 759 F.2d 659, 662 _____________ ______ n.4 (8th Cir. 1985). In this case, the relevant material available to us consists almost entirely of the indictments in the two prosecutions, along with the government's statement that the Florida prosecutors introduced no "evidence of criminal acts in Puerto Rico." The indictments tell us that both of the -7- charged conspiracies involved efforts to import cocaine from South America to the United States during overlapping periods of time (July 1988 to March 1991 in Florida, January 1987 to September 1991 in Puerto Rico). The indictments also suggest that at least some of the drugs imported by each conspiracy ended up (or were intended to end up) in South Florida. These are attributes, however, that might unfortunately be given at any particular moment to any number of completely distinct criminal operations, and they are hardly indicative of an identity between the conspiracies charged here. More telling are the differences between the alleged schemes. The two indictments named a total of fifty conspirators, but only Mantecon was charged in both cases. Though they had similar goals -- the importation of illegal drugs -- the organizations described in the indictments appear to have employed different methods: the Florida conspiracy obtaining shipments directly from foreign sources by boat; the Puerto Rico conspiracy using a more elaborate system that involved dropping loads of drugs into the ocean from airplanes or "motherships," retrieving them in speedboats, and finally transferring them to rubber life rafts and bringing them to shore. Certainly, Mantecon's alleged roles in the conspiracies differed significantly. In Puerto Rico he is charged with having played a limited and subordinate role, one of several men assigned to the job of -8- recovering drugs from their drop-off points in the ocean. The Florida indictment, on the other hand, identified him as a ringleader who arranged for shipments, financed preparations, provided boats, captains and crews, and was responsible for distributing the imported drugs. In sum, the only points of similarity between the conspiracy prosecuted in Florida and the conspiracy charged in Puerto Rico are (1) that Mantecon was involved in both, (2) that both involved schemes to import drugs, and (3) that both took place at about the same time. "[S]uch factors are suggestive rather than dispositive," United States v. David, _____________ _____ 940 F.2d at 734, and when viewed here against the important differences between the indictments they suggest that Mantecon was in fact stirring two pots, not that the government has conjured two conspiracies out of the "same offense." Mantecon's reliance on Grady v. Corbin, 495 U.S. 508 _____ ______ (1990), does not avail him. Grady held that "the Double _____ Jeopardy Clause bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted." Id. at 510. In United States v. ___ ______________ Calderone, 917 F.2d 717 (2d Cir. 1990), a divided panel ruled _________ that Grady will bar a conspiracy prosecution where, in the _____ -9- course of litigating a previous conspiracy charge, the government has "proved conduct" (i.e., the commission of overt acts) that it will also need to prove to establish the existence of the second conspiracy. Supposing without deciding that the Calderone majority _________ properly applied Grady to cases involving successive _____ conspiracy prosecutions, cf. United States v. Felix, 112 ___ ______________ _____ S.Ct. 1377, 1383-85 (1992) (previous prosecution for substantive crimes does not prevent government from prosecuting conspiracy where conduct constituting substantive crimes will be proved as overt acts to establish the conspiracy); United States v. Rivera-Feliciano, 930 F.2d 951 ______________ ________________ (1st Cir. 1991) (same), the rule it stated has no bearing on this case. The Florida and Puerto Rico prosecutions are independent in essence and in all particulars save for Mantecon's presence as a defendant. According to the Puerto Rico indictment, all of the overt acts which establish Mantecon's involvement in the Puerto Rico conspiracy were committed in Puerto Rico. On the other hand, the government has told us (and Mantecon has not challenged the assertion) that the Florida prosecutors introduced no evidence of criminal acts in Puerto Rico. It therefore does not appear that the Puerto Rico prosecutors will need even to introduce any of the evidence used in the Florida case, see United ________ ___ ______ States v. Felix, 112 S.Ct. at 1382 ("a mere overlap in proof ______ _____ -10- between two prosecutions does not establish a double jeopardy violation"), much less that they will have to "prove conduct that constitutes an offense" for which Mantecon has already been tried. The district court's order denying the motion to reconsider is summarily affirmed pursuant to Local Rule 27.1. ________ The petition for a writ of mandamus is denied. Mandate shall ______ _____________ issue forthwith. _______________ -11-