Julio MATTEI–ALBIZU, Petitioner,

v.

UNITED STATES of America,
Respondent.

Civil No. 08–1277(DRD).
Related Crim. No. 01–640(DRD).

United States District Court,
D. Puerto Rico.

March 29, 2010.

Julio Mattei–Albizu, Talladega, AL, pro se.

Marshal D. Morgan, United States Attorneys Office, District of Puerto Rico, San Juan, PR, for Respondent.

### *OPINION & ORDER*

DANIEL R. DOMINGUEZ, District Judge.

Before the Court is Petitioner's 28 U.S.C. Sec. 2255 habeas corpus petition (D.E. # 1)[1]. Respondent filed a response to the Petition (D.E. # 13). For the reasons discussed below, the Court finds that Petitioner's request is DENIED.

### I. BACKGROUND

On August 30, 2001, March 7, 2000, Petitioner, Julio Mattei–Albizu (hereinafter "Petitioner" or "Mattei–Albizu") was charged along with ten (10) other co-defendants with conspiracy to distribute multi-kilogram quantities of controlled sub-

stances; to wit one (1) kilogram of heroin, in excess of five (5) kilograms of cocaine, in excess of five (5) kilograms of cocaine base, and in excess of fifty (50) pounds of marihuana, in violation of Title 21 *United States Code,* Section 841(a)(1) and Title 21, *United States Code,* Section 846 (Crim. D.E. 2)[2].

On September 28, 2001, Petitioner was arraigned before Magistrate Judge Jesus A. Castellanos, during which he entered a plea of not guilty (Crim. D.E. 50). On October 1, 2001, Petitioner was ordered detained pending trial (Crim. D.E. 52). On November 7, 2001, Mattei–Albizu was appointed CJA counsel Luis Chaves Ghigliotty (Crim. D.E. 68). On May 30, 2003, Petitioner filed a Motion to Sever (Crim. D.E. 217). On June 2, 2008, the Government filed its Response to the Motion to Sever (Crim. D.E. 219). On June 4, 2003, the Court issued an Opinion and Order denying Petitioner's Motion to Sever (Crim. D.E. 244).

On June 9, 2003, a jury was impaneled to hear the trial of six (6) of the ten (10) co-defendants who had not yet entered into plea agreements with the Government (Crim. D.E. 225). On or about the first day of trial, after the jury had already been empaneled, the Government offered the remaining six (6) defendants a package plea deal. The package plea was in the neighborhood of two hundred and fifty two (252) months of imprisonment assuming each particular defendant had a minimal criminal history.[3] On June 10, 2008, the remaining co-defendants, except for Mattei–Albizu entered into a package plea

---

1. D.E. is an abbreviation of docket entry number.

2. Crim. D.E. is an abbreviation for criminal docket entry.

3. The Court deviated from the two hundred and fifty two (252) months package deal on

two occasions. One was with defendant Raymond Torres, who was sentenced to three hundred and thirty six (336) months due to his leadership role in the organization. The other was in the case of co defendant Renovales Velez who was sentenced to two hundred and thirty eight (238) months.

agreement with the Government (Crim. D.E. 230, 232, 234 and 238). On June 11, 2003, after rejecting the package plea offer, Petitioner entered into a straight plea as to Count one (1) of the Indictment (Crim. D.E. 240).

The purpose of accepting a straight plea instead of accepting the package plea deal was to be able to present evidence, at sentencing, and argue against, the inclusion of one or more murders; as well as an enhancement for the use of a firearm during the commission of the conspiracy, and the overall amount of drugs attributed to Mattei–Albizu (Transcript of Change of Plea Hearing, September 11,2008, pages 22–23).

On September 11, 2003, the U.S. Probation Officer issued a Pre–Sentence Investigation Report ("PSR") as to Mattei–Albizu (Crim. D.E. 256). On August 26, 2003, the Government filed its objections to the PSR (Crim. D.E. 247). On September 22, 2003, Petitioner, through his counsel, filed a Sentencing Memorandum (Crim. D.E.268).

On September 24 and 25, 2003, as well as October 1, 9 and 15 2003, the Court held evidentiary hearings related to Petitioner's challenges to certain findings of the PSR as it related to his sentencing (Crim. D.E. 276, 293, 303 and 304). On October 5, 2003, the Court ordered both parties to file short briefs as to the amount of drugs and the issue of weapons for which Petitioner should be held accountable for. The Court provided each side specific deadlines for the filing of the briefs (Crim. D.E. 304). Both parties complied with the Court's order. On May 28, 2004, the Court held Petitioner's sentencing hearing and proceeded to sentence Mattei–Albizu to three hundred and twenty four (324) months of imprisonment, five (5) years of supervised release and a monetary assessment of one hundred dollars ($100.00) (Crim. D.E. 397).

On June 2, 2004, Petitioner filed a timely notice of appeal before the United States Court of Appeals for the First Circuit (Crim. D.E. 398). On May 26, 2006, the First Circuit Court of Appeals affirmed Mattei–Albizu's conviction and sentence, 449 F.3d 61 (1st Cir.2006). On March 28, 2007, the Supreme Court of the United States denied Mattei–Albizu's petition for writ of certiorari. Petitioner timely filed his Petition to vacate, set aside or correct the Court's sentence pursuant to 28 U.S.C. Sec. 2255.(D.E.1). The Government responded on October 3, 2008, (D.E.13), and the matter was then ready for disposition.

## II. DISCUSSION

In his Petition under 28, U.S.C. Sec. 2255, Petitioner alleges that his counsel was ineffective at the trial and appellate levels for the following reasons: (a) based on his counsel's recommendation, Mattei–Albizu entered a straight plea of guilty rather than accepting what turned out to be a more beneficial package plea offer as proposed by the Government; (b) Petitioner's counsel made a tactical error by arguing that three of Petitioner's prior convictions fell outside the scope of the conspiracy and were therefore not included as overt acts of the conspiracy, which in turn served to increase Mattei–Albizu's Criminal History Category; (c) Petitioner's counsel may have had a monetary conflict of interest that "became apparent during the certiorari stage of the proceeding"; and (d) counsel failed to preserve the argument that Petitioner's sentence may be illegal pursuant to the Supreme Court's ruling in *United States v. Booker.*

### A. 28 U.S.C. Sec. 2255 standards and exhaustion requirements

Title 28 U.S.C. Sec. 2255 allows a federal prisoner to move the court to vacate, set aside, or correct his sentence if one of the following events happens:

1. the sentence was imposed in violation of the Constitution or laws of the United States . . .
2. the court was without jurisdiction to impose the sentence,
3. The sentence was in excess of the maximum authorized by law or . . .
4. The sentence is otherwise subject to collateral attack.

When a prisoner files a motion for relief pursuant to section 2255, the court may dismiss the motion without an evidentiary hearing if "the motion and files and records of the case show conclusively that the movant is not entitled to relief."

 It is well settled law that a section 2255 motion is not a substitute for an appeal. Therefore, the defendant must first raise his claims on direct appeal before bringing the claim in a section 2255 motion. *United States v. Essig*, 10 F.3d 968 (3d Cir.1993). If a defendant fails to preserve his claim on direct appeal a court may not consider the claim in a subsequent section 2255 motion, unless the defendant can establish "cause and prejudice", *United States v. Frady*, 456 U.S. 152, 167, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); or a "fundamental miscarriage of justice". *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). The exception to this dogma of the exhaustion requirement is the allegation of ineffective assistance of counsel which may be brought for the first time in a section 2255 motion.

The benchmark for judging any claim of ineffective assistance of counsel is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington*, 466, U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to succeed in a claim of ineffective assistance of counsel, the Petitioner must be able to show (1) that counsel's representation fell

bellow an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986); *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

A Petitioner claiming ineffective assistance of counsel must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The Court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making said determination, the Court should bare in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052. **Therefore, the burden is the Petitioner's to establish an actual case of ineffective assistance of counsel.** Mere allegations or unsavory feeling toward counsel and what at the time seemed correct tactical choices are insufficient to allow such a claim to prosper. Such is the case of Mattei–Albizu.

**Ineffective assistance of counsel claim based on his counsel's recommendation, Mattei–Albizu entered a straight plea of guilty rather than accepting, what turned out to be a more beneficial package plea offer as proposed by the Government.**

 Mattei–Albizu's first argument in support of his claim of ineffective assis-

tance of counsel is nothing more than a case of buyers remorse. Petitioner is upset or remorseful over having adopted a failed strategy of rejecting the Government's package plea and moving forward with a straight plea of guilty. A failed strategy does not rise to the level of ineffective assistance. At the time of the plea hearing it was extremely clear that defense's strategy was precisely to contest the amount of drugs, role in the offense and if Mattei–Albizu had weapons. Petitioner was also clear as to the penalties he faced.

> The Court: All right. What is the least amount that you have discussed with your client, if everything comes out?
>
> Mr. Chaves: The least amount?
>
> The Court: The least amount of custodial time, go through that with the Court, what is the least amount if everything comes out perfect?
>
> Mr. Chaves: It would be ten years.
>
> The Court: Ten years.
>
> Mr. Chaves: Statutory minimum. However, the actual amount that the Court finds as the guidelines apply to those amounts. And other circumstances which could perhaps induce the Court, for the Court to feel that it could deny longer the statutory minimum. And under the guidelines impose a sentence less than statutory minimum. Again, if that's the case we would move the Court at the time of sentencing to possibly impose a sentence of less than ten years. But after entering the plea we understand that the exposure is of ten years.
>
> The Court: To life.
>
> Mr. Chaves: To live (sic) [life], maximum.
>
> The Court: Sir, have you and your attorney talked about how the Sentencing Commission Guidelines might apply to your case?
>
> Defendant: Yes.

> The Court: You understand that the sentence imposed may be different from any estimate your attorney may have given you?
>
> Defendant: Yes.

(Change of Plea Hearing June 11, 2003, pages 13–15).

> The Court: He's not accepting all those quantities? Which quantities is he going to accept?
>
> Mr. Chaves: No, he's not. He's going to accept five or more kilograms of cocaine.
>
> The Court: Okay. Very well. That does not impede the government to prove more than that. You understand that?

(Change of Plea Hearing June 11, 2003, page 17).

> The Court: Now, that you have heard the government's version of the facts through the interpreter, do you agree with the government's version of facts and if you don't tell me which ones you don't agree.
>
> Mr. Chaves: We do not agree with the government's version of the facts as stated by U.S. Attorney Vaccaro.
>
> The Court: You agree he participated in the conspiracy?
>
> Mr. Chaves: We agree that he participated in the conspiracy to distribute drugs.
>
> The Court: Sir, do you agree that you participated in the conspiracy to distribute drugs?
>
> Defendant: Yes.
>
> The Court: Do you agree that you participated for at least a distribution of more than five kilos of cocaine?
>
> Mr. Chaves: During the course of the conspiracy. Do you agree to that?
>
> Defendant: Yes.

The Court: Well, that's enough. Those are the sufficient facts for the Court to accept the plea. **The issue will then be the amount, whether he carried a weapon and whether he participated in the murders.** (Emphasis ours.)

Mr. Chaves: Also the role in the offense.

THE Court: Well the role, yes, the particular role that he already had.

(Change of Plea Hearing June 11, 2003, pages 21 to 23).

▮▮▮ A reading of the excerpts of what transpired during the Change of Plea Hearing leave no doubt that the idea of leaving certain areas open for argument during the sentencing phase was a thought out defense strategy which Petitioner specifically agreed and accepted. As with all strategies some are successful while others are not that is part of the process. Petitioner took a well informed, calculated risk and now must accept the consequences of his actions and decisions. **Tactical decisions, whether wise or unwise, successful or unsuccessful, cannot ordinarily form the basis of a claim of ineffective assistance.** *United States v. Ortiz Oliveras,* 717 F.2d 1, 4 (1st Cir.1983). A reviewing court must not lean too heavily on hindsight: a lawyer's act and omissions must be judged on the basis of what he knew, or should have know, at the time his tactical choices were made and implemented. *Ouber v. Guarino,* 293 F.3d 19, 25 (1st Cir.2002).

A review of the record clearly indicates that Petitioner's counsel was well informed of the facts surrounding Mattei–Albizu's

case as well as the potential sentences faced depending on the findings of the Court. Petitioner was well aware of this through out his Change of Plea Hearing and through his Sentencing Hearing of the possible sentences he was exposed to.[4] This is not an allegation of ineffective assistance of counsel it is merely Monday morning quarter backing in which hindsight is 20/20. Such is not the standard established by *Strickland.* As such Petitioner's first allegation of ineffective assistance of counsel is denied.

**Petitioner's counsel made a tactical error by arguing that three of Petitioner's prior convictions fell outside the scope of the conspiracy and were therefore not included as overt acts of the conspiracy, which in turn served to increase Mattei–Albizu's Criminal History Category.**

▮▮▮ Petitioner's second argument in support of his claim of ineffective assistance of counsel involves a contention that his attorney challenged the inclusion of three of Mattei–Albizu's prior convictions as overt acts of the conspiracy[5]. This in turn caused Petitioner's Criminal History Category to deviate from a category I to a category IV. Again, this is part of the consequences of the strategy which Mattei–Albizu choose to follow at his Change of Plea Hearing.[6]

The Court: Fine. He accepts that he participated in the conspiracy from 1997 until when?

Mr. Chaves: Until the date of his arrest.

---

**4.** The Court notes that the sentencing hearing lasted five days for it was a full evidentiary hearing in which both sides argued the different guideline calculations that were left open at the Change of Plea Hearing.

**5.** Specifically these were prior convictions dated May 3, 2003; December 21, 1993 and August 2, 1994.

**6.** By Petitioner pleading guilty to the conspiracy from 1997 through 2001, Mattei–Albizu lowered the drug quantity he was to be held accountable for since the conspiracy as charged ran from 1994 through 2001 (Crim. D.E. 2).

The Court: Okay. From 1997 to the date of arrest was sometime around 2001?

Mr. Chaves: Yes.

Mr. Vaccaro: September.

Mr. Chaves: September 2001.

The Court: So, he participated in the conspiracy and he participated from 1997 to 2001. And he distributed and is responsible for more than five kilograms of cocaine. He accepts that?

Defendant: I accept that, but after 1997.

The Court: Good. Fine. So, but I want to make sure because I don't want to have a playing around with words. All right. I want to make sure. That he's accepting that he participated in the conspiracy after 1997. Can I have a yes or a no?

Defendant: Yes.

(Change of Plea Hearing Transcript, June 11, 2003, pages 25–26).

A review of the transcript of the Change of Plea Hearing as well as the Sentencing Hearing and the complete record of this case indicates that counsel argued in favor of the inclusion of the prior convictions as part of the conspiracy to which Petitioner plead guilty to [7].

Mr. Chaves: Your Honor, the pre-sentence report also attributes to him certain prior convictions on drug charges.

The Court: Are they part of the conspiracy?

Mr. Chaves: We submit that they're part of relevant conduct.

The Court: Very Well. If they are during the years of the conspiracy the Court will take them into consideration.

Mr. Chaves: They're 1993, the conspiracy is 1994. However, if we look under, if we go on the underlying facts the fact is that he was arrested with Jorge Lagares, the co-defendant in this case in 1993, both Lagares and he. And was part of the same course of conduct. So in this respect, I get to sort of delete six additional points towards the criminal history category—I'm sorry.

Ms. Doble: Three for 1993. And three for 1994, it's clearly within—

The Court: **Excuse me, This is simple. I will look at the criminal conviction documents and will determine if the facts fall either inside or outside of the conspiracy. Simple.** (Emphasis ours.)

Ms. Doble: Your Honor, we want to tell something to the Court which is very important. I'm requesting the Court produce the change of plea hearing transcript, he stated that anything Mattei did before 1997 should not be attributed to this defendant as part of the conspiracy because he joined in 1997. Now he wants to—

The Court: Yes, I recall that. It's one of those I want to have my cake and eat it too.

Ms. Doble: Exactly.

The Court: In other words—

Mr. Chaves: No.

The Court: In other words, he says Judge, limit me in your sentencing matters to post 1997 conduct, or 1997 conduct on because I was not there at all. And now today he's got the Abraham Lincoln argument, oh, but now eliminate the 1993 and the 1994 because those fall within the conspiracy. Either it is or it isn't.

Mr. Chaves: They do fall under the same relevant conduct and the same course of conduct. And, therefore, they shouldn't be because if you look at the prior convictions they're '93, '94. Jorge Lagares, one of the two principals in this conspiracy.

---

**7.** See Mattei–Albizu's Sentencing Memorandum Crim. D.E. 355 filed March 4, 2004.

The Court: ... notwithstanding that his client did not arrive to the conspiracy after 1997. I want to see if by any chance, if by my (sic) [any] chance they may be within the conspiracy and he either gets it all or none. He can't allege that he was and he wasn't. And we'll see which is more beneficial for him.

(Sentencing Hearing Transcript October 9, 2008, pages 32–34).

A review of the above transcribed exerts shows that Petitioner's allegation that his attorney did not argue against the increase in his Criminal History Category is completely unfounded and contrary to the record. Once again counsel continued to argue his though out strategy that best benefitted Mattei–Albizu. Much like a casino you win some you loose some. This time Petitioner gambled and lost.

**It seems that counsel's tactical decision, with his client's consent, to plead guilty to criminal involvement as of 1997 and not prior to said date, allowed for a lower drug quantity but increased Mattei–Albizu's Criminal History Category.** Petitioner can not expect that his prior criminal activity simple be overlooked and he be held unaccountable.

Petitioner's second ground of ineffective assistance of counsel is unsupported and contrary to the record and is therefore denied.

**Petitioner's counsel may have had a monetary conflict of interest that "became apparent during the certiorari stage of the proceeding".**

■ The United States Supreme Court has established that in order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). This standard first dictated by the Supreme Court in conflict of interest cases regarding joint representations, has been extended to conflict of interest between counsel and his client. *United States v. Soldevila–Lopez,* 17 F.3d 480 (1st Cir. 1994).

The First Circuit Court has held that in order to show an actual conflict of interest, a defendant must show that (1) the lawyer could have pursued a plausible alternative defense strategy or tactic and (2) the alternative strategy or tactic was inherently in conflict with or not undertaken due to the attorney's other interests or loyalties. *Guaraldi v. Cunningham,* 819 F.2d 15 (1st Cir.1987) [8].

In the case at hand, Petitioner failed to raise any objection during the course of his Change of Plea Hearing or his five (5) day Sentencing Hearing, to a potential conflict of interest that could have adversely affected his lawyer's performance. Therefore, in order for him to prevail in his claim he must demonstrate an actual conflict that adversely affected his lawyer's performance. Mattei–Albizu is unable to meet this burden simply because the record contradicts his allegation.

■ Mattei–Albizu couches this alleged conflict on the contention that his attorney approached his wife and requested payment in order to prepare a writ of certiorari before the Supreme Court [9]. It is well

---

**8.** Courts have recognized actual conflicts of interest between an attorney and his client when pursuit of a client's interests would lead to evidence of an attorney's malpractice. *United States v. Ellison,* 798 F.2d 1102(7th Cir.1986), *Cert. Denied,* 479 U.S. 1038, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987).

**9.** Aside from Mattei–Albizu's statement on the matter, the Court does not possess any additional evidence to support the allegation.

settled law that there is no constitutional right to counsel for a discretionary appeal on direct review of a conviction. *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The right to appointed counsel extends to the first appeal of right, and no further. *Pennsylvania v. Finley*, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987). Since Attorney Chaves had no obligation as a CJA appointed attorney to assist Mattei–Albizu in any proceeding beyond his appeal to the First Circuit Court, he therefore had no obligation to prepare a writ of certiorari and receive CJA payment for his work. Certainly Petitioner can not expect that an attorney prepare a writ of certiorari with all that it entail simply out of the kindness of his heart; there is no free lunch obligation of counsel.

Since Petitioner has failed to meet the burden of establishing actual conflict, his third allegation of ineffective assistance of counsel is denied.

**Counsel failed to preserve the argument that Petitioner's sentence may be illegal pursuant to the Supreme Court's ruling.**

Petitioner's final allegation of ineffective assistance of counsel revolves around *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). It is settled law that at the very least, a Booker issue is preserved if the defendant below raised an argument under either *Apprendi* or *Blakely*. In the case at hand, the Court issued its final judgment on May 28, 2004 [10], which was just before the Supreme Court issued its decision in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, on June 24, 2004. It is well settled in this Circuit that counsel's failure to anticipate *Blakely* does not constitute unreasonable performance under *Strickland*. *United States v. Campbell*, 268

F.3d 1 (1st Cir.2001). Further, *Blakely* nor *Apprendi* are not retroactive in the realm of the First Circuit. *Sepúlveda v. U.S.*, 330 F.3d 55 (2003) and *Cirilo Muñoz v. U.S.*, 404 F.3d 527 (2005).

As for *Apprendi*, Mattei–Albizu was sentenced by the Court to three hundred and twenty four months (324)of imprisonment, which is the lower end of his applicable guideline [11]. The maximum penalty that was available for this Petitioner was life imprisonment, therefore attorney Chaves did not have a valid *Apprendi* argument to raise before the Court. Counsel is not required to waste the court's time with futile or frivolous arguments. *United States v. Hart*, 933 F.2d 80 (1st Cir.1991). AS such Petitioner's final allegation of ineffective assistance of counsel is denied.

## III. CONCLUSION

For the reasons stated, the Court concludes that Petitioner **JULIO MATTEI–ALBIZU**, is not entitled to federal habeas relief on the claim presented. Accordingly, it is ordered that petitioner **JULIO MATTEI–ALBIZU's** request for habeas relief under 28 U.S.C. Sec. 2255 (D.E.# 1) is **DENIED,** and his Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. Sec. 2255 is **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

---

10. Criminal D.E. 397.

11. See Sentencing Hearing Transcript.