# United States Court of Appeals
## For the First Circuit

No. 04-1554

UNITED STATES,

Appellee,

v.

JULIO LAGUNA-ESTELA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Boudin, Chief Judge,

Torruella, Circuit Judge,

and Fusté,[*] District Judge.

María Teresa Arsuaga-Byrne, Assistant Federal Public Defender, with whom Joseph C. Laws, Jr., Federal Public Defender, was on brief for appellant.
Nelson Pérez-Sosa, Assistant United States Attorney, with whom H.S. García, United States Attorney, was on brief for appellee.

January 12, 2005

[*]Of the District of Puerto Rico, sitting by designation.

**FUSTE**, **District Judge**.     Defendant-appellant, Julio Laguna-Estela was indicted and prosecuted in case 99-CR-72-ORL-19DAB, in the United States District Court, Middle District of Florida, Orlando Division.  The indictment alleged that Mr. Laguna, beginning in a date unknown and continuing through on or about November 12, 1998, was involved in a conspiracy to possess with intent to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1) & 846.  On December 21, 2000,  Mr. Laguna pleaded guilty to Count One of the indictment pursuant to a plea agreement.

According to the statement of facts in Mr. Laguna's plea agreement, as well as Mr. Laguna's statements made at his change of plea hearing, over the course of approximately two years, a group of individuals headed by Rafael Ramírez and José Irizarry brought multi-ounce quantities of heroin into the Middle District of Florida for distribution in Orange and Osceola Counties. Mr. Laguna was paid $200 for each delivery made and distributed approximately 792 grams of heroin in connection with the scheme.

On March 26, 2001, Mr. Laguna was sentenced to a forty-six-month term of imprisonment and a supervised release term of three years for participation in the Florida drug conspiracy.

On March 5, 2002, a grand jury sitting in the District of Puerto Rico issued a ten-count indictment charging Mr. Laguna and nine other co-defendants with conspiracy to possess with intent to distribute narcotics pursuant to 21 U.S.C. §§ 841(a)(1) and 846.

The indictment charged that from on or about the month of September 1998 and up to and including August 11, 1999, in the District of Puerto Rico and elsewhere, the defendants conspired to knowingly and intentionally possess with the intent to distribute heroin and cocaine. On March 26, 2002, Mr. Laguna was arrested and appeared initially before a magistrate judge. The magistrate judge ordered Mr. Laguna temporarily held without bail and appointed a federal public defender to represent him. On April 1, 2002, Mr. Laguna was arraigned and entered a plea of not guilty. On April 9, 2002, Mr. Laguna was ordered detained, pending trial.

On July 17, 2003, Mr. Laguna filed a motion to have the prosecution declared in violation of the Double Jeopardy Clause of the United States Constitution, alleging that he was being charged in Puerto Rico with the same offense for which he was convicted in Florida. On October 1, 2003, the magistrate judge issued a report and recommendation denying Mr. Laguna's motion to dismiss the indictment and finding that the facts giving rise to Mr. Laguna's Florida conviction were sufficiently distinct from the facts underlying the conspiracy charge in the Puerto Rico prosecution to avoid a double jeopardy violation.

On October 10, 2003, Mr. Laguna objected to the magistrate's report and recommendation, arguing that he had not been afforded an evidentiary hearing in which to rebut the government's evidence. On December 1, 2003, Judge García-Gregory

-3-

held an evidentiary hearing during which the government presented the testimony of cooperating co-defendant Jesús Tocuyo-González, who had pleaded guilty pursuant to a plea and cooperation agreement. On January 7, 2004, the evidentiary hearing was continued and Mr. Laguna took the stand to present his testimony.

On March 15, 2004, the district court issued an opinion and order adopting the magistrate judge's report and recommendation. The court found that Mr. Laguna failed to establish a prima facie nonfrivolous double jeopardy claim and that even if he had, the government met its burden of proving by a preponderance of the evidence that the indictments charged separate offenses. On March 22, 2004, Mr. Laguna filed an interlocutory appeal.

## I.

## Double Jeopardy Framework

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. IV. No person may be subject to a second prosecution following an acquittal or conviction or to multiple punishments for the same offense. United States v. Patel, 370 F.3d 108, 114 (1st Cir. 2004); United States v. Stoller, 78 F.3d 710, 714 (1st Cir. 1996). Thus, if two conspiracy charges are based on a defendant's participation in one single conspiracy, the Double Jeopardy Clause

-4-

bars the second prosecution. See, e.g., United States v. Collazo-Aponte, 216 F.3d 163, 197-98 (1st Cir. 2000).

"A defendant claiming double jeopardy has the burden of presenting evidence to establish a prima facie nonfrivolous double jeopardy claim. Once such a claim is established, the burden shifts to the government to prove by a preponderance of the evidence that the indictments charge separate offenses." United States v. Booth, 673 F.2d 27, 30-31 (1st Cir. 1982); see, e.g., United States v. Sturman, 679 F.2d 840, 844 (11th Cir. 1982) ("It is undisputed that the burden of going forward by putting the double jeopardy claim in issue is and should be on the defendant. It is similarly reasonable to require the defendant to tender a prima facie nonfrivolous double jeopardy claim before the possibility of a shift of the burden of persuasion to the government comes into play.").

In most double jeopardy cases, courts use the "same evidence" test articulated in Blockburger v. United States, 284 U.S. 299, 304 (1932), to decide whether two offenses are the same offense for double jeopardy purposes. Booth, 673 F.2d at 29. This test ordinarily requires a determination whether each offense requires an element of proof that the other does not. See, e.g., United States v. LiCausi, 167 F.3d 36, 46 (1st Cir. 1999).

In conspiracy cases, a more nuanced form of the same evidence test is applied because of the possibility that the government literally could comply with it while actually carving up

a single conspiracy to commit several crimes into separate prosecutions. In order to determine whether two charged conspiracies that allege violations of the same substantive statute are the same offense for the purpose of double jeopardy, the First Circuit has identified five factors that must be considered: "(a) the time during which the activities occurred; (b) the persons involved; (c) the places involved; (d) whether the same evidence was used to prove the two conspiracies; and (e) whether the same statutory provision was involved in both conspiracies." United States v. Gómez-Pabón, 911 F.2d 847, 860 (1st Cir. 1990) (citing United States v. García-Rosa, 876 F.2d 209, 228 (1st Cir. 1989)); United States v. Fisher, 3 F.3d 456, 461 (1st Cir. 1993); Collazo-Aponte, 216 F.3d at 198; Booth, 673 F.2d at 29. Based on these factors, we must determine whether it was clearly erroneous for the district court to have concluded that Mr. Laguna failed to make a prima facie showing of a nonfrivolous double jeopardy claim. See Fisher, 3 F.3d at 460-61.

## A.    **Time of the Activities**

The Puerto Rico conspiracy allegedly spanned from September 1998 until August 11, 1999. The indictment in the Florida case charges a conspiracy which ended on or about November 12, 1998, suggesting that the time of the two conspiracies overlapped by only two months. However, when we properly consider Mr. Laguna's plea agreement, it seems that the actual overlap may

-6-

be significantly greater. Mr. Laguna's plea agreement in the Florida case stipulates that the scheme to possess and distribute heroin spanned the years 1998 and 1999 and that Mr. Laguna was involved in a number of drug transactions "[o]n several occasions during this time period." It is apparent that, although the Florida indictment only charged conduct through November 12, 1998, Mr. Laguna ultimately pled guilty to conduct which occurred during a time period spanning the remainder of 1998 and an unidentifiable number of months in 1999. Based on these vague descriptions, the extent of the overlap in the two charged conspiracies is unascertainable, but clearly greater than suggested by the indictments.

## B. Persons Involved

Of the fifteen defendants indicted in the Florida case and the ten defendants indicted in the Puerto Rico case, only Mr. Laguna is common to both. Thus, the persons involved in the two conspiracies are substantially different. See United States v. Hart, 933 F.2d 80, 86 (finding it probative of two separate conspiracies where the defendant was the only common party to both indictments); Booth, 673 F.2d at 29 (finding that ten common defendants of the twenty-four charged in a Maine indictment and the nineteen charged in the Florida indictment was insufficient to find that the persons in the two conspiracies were substantially similar); United States v. Smith, 82 F.3d 1261, 1269 (3d Cir. 1996)

("When the evidence indicates that the activities of the alleged conspiracies are not interdependent or mutually supportive and that there are major participants in each conspiracy who lack knowledge of, or any interest in, the activities of the other, this factor weighs heavily in favor of a conclusion that two conspiracies exist.").

## C. **Places Involved**

The government relies on the fact that Mr. Laguna's plea agreement in the Florida case refers only to his involvement in the scheme to possess and distribute heroin in the vicinity of Orange and Osceola Counties, Florida. However, Mr. Laguna's presentence report, written over a year before Mr. Laguna was indicted in the Puerto Rico case, contains a copy of Mr. Laguna's written statement in which he writes that he agreed to make deliveries of drugs in Puerto Rico.[1] Further, Mr. Laguna testified that his involvement with Mr. Ramírez, both before and after Mr. Ramírez was arrested, involved drug transactions between Florida and Puerto Rico. Thus, location is common to both conspiracies.

## D. **Evidence Used**

The evidence on which the government plans to rely in the present cases involves the testimony of co-defendant Tocuyo. Based on Tocuyo's testimony, the government plans to prove that

---

[1] Mr. Laguna's presentence report for the Florida case is dated February 15, 2001. Mr. Laguna was indicted in the Puerto Rico case on March 5, 2002.

Mr. Laguna worked as a main supplier in the conspiracy and had other co-conspirators, like Tocuyo, working for him. On the contrary, in the Florida case, Mr. Laguna worked as a courier, or mule, and delivered heroin under the direction of Mr. Ramírez and Mr. Irizarry. In addition, the Florida drug scheme involved only heroin distribution, whereas the present case charges a conspiracy to distribute both heroin and cocaine. But see Gómez-Pabón, 911 F.2d at 861 (finding that although the drug involved in Count Two was marijuana and that in Count Three was cocaine, this distinction did not establish two separate conspiracies).

Further, when questioned, Tocuyo testified that in the Florida case, he knew only Mr. Irizarry, Mr. Ramírez, and Mr. Irizarry's wife. In contrast, Tocuyo testified that he knew almost all of the co-defendants charged in the indictment in the present case. Further, the government asserts that it plans to present tape recorded conversations as evidence in the present case which fail to mention, with the exception of Mr. Laguna, any of the co-conspirators in the Florida scheme. Thus, from this vantage point in the proceedings, and relying on the government's allegations of what they will offer at trial, it seems that the evidence used to support the two separate conspiracies is distinct.

**E.   Same Statutory Provision**

Both conspiracies are brought under the same statutory provisions, 21 U.S.C. §§ 841(a)(1) & 846. However, "the overlap of

statutory provision for each [indictment] does not belie the separateness of the conspiracies established by the other four factors." <u>Hart</u>, 933 F.2d at 86.

## II.

## <u>Conclusion</u>

Upon weighing the five factors outlined above, and upon considering the totality of the circumstances presented by this case, we find that Mr. Laguna has failed to carry his burden of proving that there exists a nonfrivolous double jeopardy claim. Without the benefit of the facts and evidence unearthed by a full-fledged trial and with only a hue available from the rainbow of facts and evidence on which the government will eventually rely, we conclude that Mr. Laguna has not shown that the charges presently brought against him in Puerto Rico are the same to which he already pleaded guilty in Florida. As such, Judge García-Gregory properly denied Mr. Laguna's motion to dismiss the charges brought against him on the ground of double jeopardy.

We make clear, however, and as the government's counsel conceded during oral argument, that Mr. Laguna retains the right to later reassert his double jeopardy claim if it is found that the evidence on which the government ultimately relies is substantially similar to that used in the Florida case. <u>United States</u> v. <u>Stricklin</u>, 591 F.2d 1112, 1119 (5th Cir. 1979) ("Even if the government does carry its burden of persuasion and the defendant's

motion to dismiss is denied, the District Court may later vacate its finding of no prior jeopardy as the evidence develops at trial if the defendant renews his motion and the evidence shows that there was, in fact, prior jeopardy.  The ruling by the District Court on the pretrial motion merely decides whether or not, upon the evidence then before the court, double jeopardy appears.  On an [interlocutory] appeal, the correctness of that ruling, alone, will be reviewed.  Neither the District Court's nor the Circuit Court's pretrial decision will be binding as res judicata, law of the case, collateral estoppel, or any other theoretical bar as to the double jeopardy issue in the case.").  Judgment of the district court is <u>affirmed</u>.