[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10746
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cr-20607-KMM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE R. DIAZ-ROSADO,
a.k.a. Chiqui,
a.k.a. Alvaro Diaz,
a.k.a. Jose Raul Diaz,
a.k.a. Raul Diaz Rosado,
a.k.a. Jose Rosado,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 25, 2015)

Before JORDAN, JULIE CARNES, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Jose Diaz-Rosado ("Defendant") was sentenced to life imprisonment after pleading guilty to one count of conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A)(ii) and 846. He appeals, challenging both his conviction and his sentence. We find no merit in the challenge to his conviction, but do reverse his sentence and remand for resentencing by the district court.

## I.    BACKGROUND

Defendant was a participant in an extensive drug-trafficking conspiracy that transported large quantities of cocaine from Venezuela, through the Caribbean, to the United States. On August 6, 2012, a two-crewman vessel registered to Defendant was seized off the coast of Puerto Rico by United States agents, who found on board approximately 1,032 kilograms of cocaine. Later that year, on December 30, 2012, another two-crewman vessel was seized, this time off the coast of St. Croix in the United States Virgin Islands, and it contained 1,157 kilograms of cocaine. The serial numbers on that vessel's outboard motors matched ones purchased by confidential informant Walter Abreu ("Abreu"), at the request of Defendant.

2

Defendant agreed to speak to law enforcement officers about the incidents, and the latter offered Defendant the opportunity to cooperate.  These negotiations came to nothing, in part because the officers concluded that Defendant had been dishonest with them, and, in particular, that he had hidden the fact that he was then planning, yet again, to assist in the transport of cocaine.  Defendant was arrested and indicted by federal authorities ("the Government") in August 2013 in the Southern District of Florida for his alleged role in the cocaine transport uncovered by the December 2012 seizure.  He was also indicted in the District of Puerto Rico in August 2013 for his role in the cocaine importation scheme leading to the August 2012 seizure.

Defendant pled guilty in November 2013 in the Southern District of Florida to the charge arising from the December 2012 seizure.  Although he had numerous convictions in the 1990s for property crimes,[1] his criminal history under the United States Sentencing Guidelines ("Guidelines") was only a category I, due to the age of these prior convictions.  Because of the very large quantity of drugs involved in the December seizure (2,189 kilograms), his base offense level under the Guidelines was 38.  The district court applied two additional enhancements.

---

[1] Defendant was convicted of burglary and theft by taking in 1990, attempted burglary (twice) in 1994, burglary again in 1995, grand larceny in 1995, and criminal trespass in 1996. He was also arrested for assault in 1992.  Because all of Defendant's sentences were imposed more than ten years before the criminal conduct at issue in this case, they did not count in his criminal history calculation.  *See* U.S.S.G. § 4A1.2(e)(2).

Finding that Defendant had exercised leadership over other criminal participants, the court applied a four-level § 3B1.1(a) enhancement for aggravated role. Based on its conclusion that Defendant had lied to the Government during the investigation and had encouraged the confidential informant to do the same, the court also applied a two-level § 3C1.1 enhancement for obstruction of justice. Even though Defendant had pled guilty, the court denied his request for a § 3E1.1 acceptance-of-responsibility reduction. Adding all these enhancements together, Defendant's total offense level would have been 44, except that the Guidelines top out at 43. The Guidelines range for an offense level of 43 is life imprisonment, no matter the criminal history category, and the district court imposed a life sentence.

In this appeal, Defendant challenges his conviction by contesting the validity of his guilty plea. He also challenges two rulings by the district court in calculating his Guidelines: the court's application of the four-level aggravated-role enhancement and its denial of Defendant's request for a two-level acceptance-of-responsibility adjustment. We find error only in the district court's imposition of the aggravated role enhancement.

## II.    VALIDITY OF DEFENDANT'S GUILTY PLEA

Defendant entered his guilty plea on the day that trial was set to begin and without a plea agreement. He contends now that this guilty plea was invalid because the district court failed to establish a factual basis for the plea and to

4

explain the elements of the offense, both of which are required by Federal Rule of Criminal Procedure Rule 11.  We find no error by the court.

## A.    Guilty Plea Colloquy

During the change-of-plea hearing, the district court went over with Defendant all those matters that Rule 11 requires to be discussed before a court can accept a defendant's plea of guilty.[2]  As to the factual basis for the plea, the court directed the prosecutor to summarize the evidence that would have been presented at trial.  In response, the prosecutor stated that the Government could prove beyond a reasonable doubt:

> That on December 30th, 2012, the Coast Guard interdicted a vessel approximately 15 miles southwest of St. Croix, US Virgin Islands. Aboard that vessel were two individuals.  Also aboard the vessel was recovered 1,157 kilograms of cocaine.
>
> It should be noted that further investigation revealed that this Defendant was the organizer and leader of a drug-trafficking organization that would facilitate the importation of cocaine from South America, specifically, Colombia and Venezuela, and then would organize a maritime boat-to-boat transfer of bales of cocaine.
>
> He would obtain the vessels used to import the cocaine to the United States.  He would purchase these vessels from various places, including a company in Broward County called Boats 4 Less.  He

---

[2]  Diaz makes passing reference to the district court's failure, as required by Rule 11(b)(1)(A), to warn him that he could be charged with perjury should he answer falsely any questions.  Yet, Diaz does not pursue this contention and, as far as we can tell, no one is trying to prosecute him for perjury based on his Rule 11 colloquy.  Accordingly, we conclude that this minor omission by the court did not render Defendant's plea unknowing or involuntary. *See United States v. Moriarty*, 429 F.3d 1012, 1020 (11th Cir. 2005) (no plain error in failing to advise the defendant of all the information in Rule 11(b)(1) when defendant made no attempt to argue on appeal that he would not have entered the plea had he had that information).

would take those vessels and then stage them in various places, specifically in this instance in either Puerto Rico or St. Croix, and would have those vessels staged there, ready for a maritime transfer of cocaine.

In this case, there was seized, as indicated, on December 30th 1,157 kilograms.

The Government's evidence would also show that this Defendant was also involved as a related conduct [sic] on an August 6th, 2012, seizure of also [sic] cocaine, a maritime seizure off the coast of Puerto Rico. And in that case, there was 1,032 kilograms of cocaine seized.

Defendant confirmed to the court that the information provided by the prosecutor was correct, with one exception: Defendant denied that he was the leader of the organization at issue. Government counsel then summarized the evidence he would have presented at trial to prove that Defendant was a leader, which evidence consisted of audio recordings in which Defendant discusses the smuggling activities and his role in them.

At this point, the court interrupted, saying, "Mr. Rosado, let me discuss this for a moment, because I want you to make sure that you're aware of the consequences of the dispute." The court explained that, although disagreement as to Defendant's leadership role would not bar entry of the guilty plea, Defendant's insistence on denying his leadership role could have implications for the sentence to be imposed. Specifically, the court advised that, at the sentencing hearing, the Government would only have to prove by a preponderance of the evidence that Defendant was a leader of the conspiracy in order to justify the role enhancement.

6

In addition, efforts to dispute that characterization could potentially affect the likelihood of Defendant receiving an acceptance-of-responsibility reduction under the Guidelines. Defendant confirmed that he understood.

Finally, the court asked Defendant about the reasons behind his last-minute decision to change his plea, and particularly whether Defendant and his counsel had sufficient time to make that decision. Defendant explained that he wanted to plead guilty all along, and that he had thoroughly considered that decision. The court concluded the proceedings by reading the charges contained in the indictment and asking how Defendant wished to plead, to which Defendant responded, "Guilty, sir." The court accepted the plea and set a sentencing date.

### B.     Factual Basis for Plea

As noted, Defendant argues that his guilty plea is invalid because the Government offered an insufficient factual basis. Specifically, he contends that the Government's summary of the evidence supported only a finding that the goal of the conspirators was to import the cocaine, not distribute it. In addressing this contention, we note at the outset that because Defendant did not raise before the district court this objection, we review it for plain error, only. To obtain a reversal of the conviction under this standard, Defendant must show that there is error and that the error (1) is plain, (2) affects substantial rights, and (3) compromises the

7

fairness, integrity, or public reputation of the proceedings. *United States v. Moriarty*, 429 F.3d 1012, 1018-19 (11th Cir. 2005); Fed. R. Crim. P. 52(b).

Under Rule 11(b)(3), the plea must have a factual basis, meaning that there must be evidence presented to the court that could have reasonably resulted in the defendant's conviction at trial. *See United States v. Frye*, 402 F.3d 1123, 1128 (11th Cir. 2005) (holding that factual basis for plea was met by the defendant's agreement to facts articulated at plea hearing by prosecution, which facts satisfied the elements of the offense). To prove that Defendant had conspired to possess with intent to distribute a controlled substance, the Government would have to prove that there was an illegal agreement to distribute the controlled substance, that Defendant knew about it, and that he knowingly and voluntarily joined in it. *United States v. Isnadin*, 742 F.3d 1278, 1305 (11th Cir. 2014), *cert. denied*, 135 S. Ct. 161 (2014).

The Government's summary of its case against Defendant accomplished this task. The prosecutor noted that the interdiction and seizure of the cocaine-laden vessels and their crew on August 6 and December 30, 2012 demonstrated the existence of a conspiracy to distribute cocaine. Further, evidence that Defendant had purchased and prepared the vessels that were used for the transfer and planned importation of cocaine demonstrated his participation in the conspiracy. Most

8

significantly, Defendant admitted the accuracy of the above assertions by the Government, denying only that he was a leader in the venture.

Defendant argues that the Government's proffer was inadequate because it did not include any reference to a conspiracy to *distribute* the cocaine. This argument is unpersuasive because the conduct alleged to have been committed by Defendant implies his knowledge of a wider plan to distribute the cocaine once it had been imported into the United States. After all, there can be no rational purpose behind transporting over a million grams of cocaine except to ultimately transfer the drugs to others. "It is by now axiomatic that 'participation in a criminal conspiracy need not be proved by direct evidence; a common purpose or plan may be inferred from a development and collocation of circumstances.'" *United States v. Reeves*, 742 F.3d 487, 497 (11th Cir. 2014) (brackets removed) (quoting *Glasser v. United States*, 315 U.S. 60, 80 (1942)). Further, "where there are repeated transactions between participants buying and selling large quantities of illegal drugs, that may be sufficient to find the participants were involved in a single conspiracy to distribute those drugs." *Id.* (citing *United States v. Brown*, 587 F.3d 1082, 1089 (11th Cir. 2009)). Defendant's participation in multiple purchases and preparations of vessels for cocaine transportation supports a conclusion that he was involved in a conspiracy to distribute the drug.

C.      **The Court's Explanation of the Offense**

Under Rule 11, the district court is required to determine that a defendant pleading guilty has not been coerced and that he understands the nature of the charge and the consequences of the plea. *United States v. Stitzer*, 785 F.2d 1506, 1513 & n.2 (11th Cir. 1986). If the charges do not involve "esoteric terms or concepts unfamiliar to the lay mind," then reading the indictment and granting the opportunity for the defendant to ask questions may suffice to inform the defendant of the charges. *United States v. James*, 210 F.3d 1342, 1344-45 (11th Cir. 2000) (quoting *United States v. DePace*, 120 F.3d 233, 237 (11th Cir. 1997), *cert. denied*, 522 U.S. 1153 (1998)). Even a complex charge can be understood adequately when (1) the defendant is reasonably educated, (2) the court reads the indictment and lists its essential elements, (3) the court confirms that the defendant and counsel have reviewed the indictment, (4) the defendant admits to the conduct, and (5) the defendant does not have any questions. *Id.* at 1345 (citing *DePace*, 120 F.3d at 238).

The charge in this case was simple, involving no concept more complex or esoteric than "conspire" or "distribute." These are surely concepts the lay mind can grasp. Further, Defendant confirmed at the hearing that his attorney had discussed the indictment with him and that he understood it. In addition, the district court read the charge in the indictment verbatim to Defendant before

10

accepting his plea.  Given these facts, it is clear that Defendant understood the charge against him.

Thus, Defendant cannot meet the requirements for plain-error review because his allegations reveal no error, plain or otherwise, in the proceeding at which he entered his plea of guilty.  We therefore affirm Defendant's conviction.

## III.    AGGRAVATED-ROLE ENHANCEMENT

In challenging his sentence, Defendant argues that the district court erred in finding that he was an organizer or leader of the conspiracy and therefore in applying a four-level, aggravated-role enhancement pursuant to U.S.S.G. § 3B1.1(a).

"A district court's determination as to a defendant's role in the offense is a finding of fact subject to a clearly erroneous standard of review."  *United States v. Yates*, 990 F.2d 1179, 1182 (11th Cir. 1993); *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010) (finding of facts at sentencing reviewed for clear error).  A clear error is one that gives this Court the "definite and firm conviction that a mistake has been committed."  *Id.*  Any contested fact relied upon in sentencing a defendant must be proved by a preponderance of the evidence standard, which requires "reliable and specific evidence."  *United States v. Bernardine*, 73 F.3d 1078, 1080 (11th Cir. 1996).  A party's mere factual assertion

does not constitute reliable, specific evidence unless those facts have been admitted. *United States v. Washington*, 714 F.3d 1358, 1361 (11th Cir. 2013.)

Although we review the district court's factual findings for clear error, "[w]hether a particular provision of the guidelines applies to a given set of facts is a question of law reviewed de novo." *Yates*, 990 F.2d at 1182 (citing *United States v. Kirkland*, 985 F.2d 535, 537 (11th Cir. 1993); *United States v. Williams*, 527 F.3d 1235, 1249 (11th Cir. 2008) (questions of law, including the application of U.S.S.G. § 3B1.1, reviewed *de novo*).

Under the Guidelines, the court is instructed that "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase [the offense level] by 4 levels." U.S.S.G. § 3B1.1(a). For that enhancement to apply, we require "evidence that the defendant exerted some control, influence or decision-making authority over another participant in the criminal activity." *United States v. Martinez*, 584 F.3d 1022, 1026 (11th Cir. 2009); U.S.S.G. § 3B1.1, comment. (n.2) ("the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants").

With regard to the applicability of § 3B1.1 in this case, the extensiveness of the criminal organization is not contested. Rather, the key legal questions are (1)

12

what suffices to make a person a leader and (2) when can someone who helps a conspirator be deemed a participant. On the first point,

> Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, comment. (n.4). On the second point, "[a] 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted. A person who is not criminally responsible for the commission of the offense . . . is not a participant." U.S.S.G. § 3B1.1, comment. (n.1). The commentary gives as an example of a non-participant "an undercover law enforcement officer." *Id.*

Initially, the Presentence Investigative Report ("PSR") prepared by the Probation Office had not recommended that Defendant be considered a leader in the conspiracy. But after the Government's objections to the absence of a role enhancement, the probation officer revised the PSR to recommend the four-level enhancement for aggravating role. This revised PSR provided general information concluding that Defendant exercised a supervisory role over other participants in the cocaine trafficking conspiracy because he hired crew for the vessels and coordinated their activities and because he directed Abreu to purchase engines that

13

would be used on one of the vessels.[3]  From the outset, Defendant contested the Government's characterization of him as a leader in the conspiracy:  first in the change-of-plea hearing; then in response to the Government's objections to the original PSR's lack of a leadership enhancement; then in response to the revised PSR that included the enhancement; and finally at the sentencing hearing.  As noted, imposition of the leadership enhancement is based on Defendants' interaction with (1) the vessel crews and (2) with Abreu.  Because those relationships are factually discrete and raise different legal issues, we discuss them separately.

## A.    Leadership of the Crews

As to the August 2012 shipment (which was indicted in the District of Puerto Rico), the Government stated that recordings made of Defendant's conversations indicate that he had supplied the vessel used in that shipment, had supplied telephones to the crew of the vessel, and had communicated with the crew

---

[3]  The revised PSR's full description of Defendant's role states:

Jose Diaz-Rosado organized the shipment of kilogram quantities of cocaine from South America Venezuela [sic], through the Caribbean, with either the Dominican Republic or Puerto Rico as the final destination.  According to the Government, the defendant hired and supervised the crew members of the vessels, staged the vessels, and coordinated and supervised the maritime transfer of cocaine and its ultimate off-loading onto land.  Additionally, the defendant also directed the cooperating individual to purchase engines for a vessel.  Diaz-Rosado is responsible for 2,189 kilograms of cocaine and his role as an organizer or leader of a criminal activity involving five or more participants, or which was otherwise extensive, warrants a four-level enhancement, pursuant to § 3B1.1(a).[3]

14

to coordinate their activities with others "higher up in the food chain." As for the December 2012 shipment that gave rise to the offense of conviction in the present case, the Government stated that Defendant had performed similar supply and oversight duties, and had even helped recruit the crew in the Dominican Republic.

At the sentencing hearing, Defendant denied that he had in any way supervised the two crewmen involved in the August seizure, but he did not want to comment further, given that the indictment charging this transaction was still pending in Puerto Rico. As to any leadership role with respect to the two crewmen involved in the December seizure, he disputed that characterization and cited evidence to support his position that he did not fit the crewmen's description of the man who had hired them.[4] Defendant also stated that his communications with other participants in the conspiracy had been limited to relaying information between them.

Because Defendant disputed the facts articulated by the Government in support of the requested enhancement, it became the Government's burden at sentencing to prove those facts by a preponderance of the evidence. *See Martinez*, 584 F.3d at 1027 ("[O]nce a defendant objects to a fact contained in the PS[R], the government bears the burden of proving that disputed fact by a preponderance of the evidence.") The district court recognized this to be the case with these

---

[4] The crewmen had reported that they were hired by a much younger Dominican man and their description of this Dominican's hair did not match Defendant.

15

objected-to facts and seemingly acknowledged the thinness of the Government's evidence, stating at one point, "The Eleventh Circuit is going to say, where's the beef?" Although the Government offered to put on audio recordings to support its allegations about Defendant's conduct toward Abreu, it never offered to do the same with regard to the crew. This is despite the fact that the PSR states that the Government had audio recordings that proved that Defendant exercised leadership over the crew. Instead, from the sentencing transcript, it seems apparent that the Government had decided to focus on Defendant's interaction with Abreu in its efforts to prove that Defendant had exercised leadership authority during the conspiracy. In short, despite Defendant's clear denial of the accuracy of allegations about his conduct toward the crewmen, the Government failed to provide the necessary evidence to prove those allegations.

It is true that Defendant did admit to certain conduct involving the crewmen, but none of it is sufficient for § 3B1.1 purposes. Specifically, the Government cites Defendant's admission that he helped the December 2012 crewmen put the vessel in the water, provided them with phones, and passed messages between them and others during the operation. But there is nothing in these facts that suggests a leadership role. Section 3B1.1 "requires the exercise of some authority in the organization." *United States v. Gupta*, 463 F.3d 1182, 1198 (11th Cir. 2006). None of the admitted conduct reveals such authority. In *Martinez*, another

16

drug-trafficking case, we held that the facts that the defendant "orchestrated" shipments of drugs and "utilized other individuals" in the process were "not enough" to establish his leadership role for § 3B1.1 purposes. 584 F.3d at 1027-28. Much the same is true here.

In the end, the sentencing transcript reveals that the district court accepted as proven the Government's allegations and statements in the PSR[5] regarding Defendant's role *vis a vis* the crewmen. But no evidence, much less a preponderance of the evidence, supported the existence of actions by Defendant that could have given rise to the § 3B1.1 enhancement. Without any evidence from the Government to support Defendant's leadership role over the crewmen, the court therefore erred in finding that the conduct alleged in the probation officer's response had been proved. *See Yates*, 990 F.2d at 1182 (reversing district court where there was "no evidence that [the defendant] had any control over [the] organization"). That leaves only the conduct relating to Abreu.

## B.    Leadership of Abreu

The PSR also states that Defendant supervised Abreu. Abreu, who had become acquainted with Defendant through the latter's Latin music promotion business, informed law enforcement officers in early 2013 that Defendant was part

---

[5] Paragraphs 4 to 15 of the PSR, insofar as they allege leadership conduct, allege that conduct solely in relation to Abreu. The probation officer's response states that the Government claims to have audio recordings of Diaz instructing the four crewmen involved in the two vessel seizures.

of a drug-trafficking organization.  Abreu had learned of Defendant's illegal activity after he, at Defendant's request, registered under his own business' name a vessel owned by Defendant and also purchased outboard motors for another of Defendant's vessels.  When the latter boat was interdicted and seized in December of 2012, Defendant then contacted Abreu, informed him of what had happened, and advised him "not to say anything" if contacted by law enforcement.  Rather than follow Defendant's advice, Abreu went to law enforcement authorities and began working as an informant.  As an informant, Abreu communicated with Defendant and was again instructed by him to deny that they knew each other, should he be approached by law enforcement.  Defendant also offered to involve Abreu in further cocaine-trafficking activities.

At the sentencing hearing, the Government reiterated the allegations in ¶¶ 4-15 of the PSR.  To the extent those paragraphs pertain to Abreu, Defendant had previously admitted most of the conduct.[6]  The Government called a witness, Drug Enforcement Agency Special Agent Jesse Ricks ("Agent Ricks"), to testify about the conduct alleged in ¶ 14, the essence of which was that Defendant "repeatedly lied to law enforcement."  But this allegation supported the enhancement for

---

[6] Defendant did object to some details of those allegations at the sentencing hearing. Specifically, Defendant initially objected to ¶¶ 8, 10, 12, and 14 of the PSR.  The objection to ¶ 8 was minor, as Defendant only contested the statement that the two outboard motors Abreu purchased were "for another boat [Defendant] had previously purchased."[6]  He eventually withdrew his objections to ¶¶ 10 and 12, both of which pertained to his meetings with Abreu.

18

obstruction of justice, and based on Agent Ricks' testimony about Defendant's misstatements to interviewing officers, the court accepted as proved the conduct in ¶ 14 and applied the enhancement for obstruction of justice.

For his part, as to any role enhancement based on his interaction with Abreu, Defendant emphasized that Abreu was not part of the criminal conspiracy, pointing out that Abreu had initially been told that the vessels were being used as part of a music promotion, "to entertain artists and their family members." Defendant also cited the Government's similar position in the grand jury proceedings that Abreu "was an innocent third party." The Government did not rebut Defendant's argument on this point. Further, as the PSR itself makes clear, Abreu contacted law enforcement as soon as Defendant told him about the conspiracy.

Nevertheless, the district court concluded that the Government had met its burden of proof in establishing the conduct alleged in the PSR in support of the role enhancement, and it applied the leadership enhancement. We, however, find insufficient the evidence in support of that enhancement.

As Defendant correctly notes, before attempting to figure out whether Defendant had supervised Abreu as to requested tasks, one must first determine whether Abreu was a criminal participant at the time. Abreu cannot be considered a participant because the Government has nowhere alleged any criminal responsibility on Abreu's part. At sentencing, the Government did point out that

19

Defendant gave directions to Abreu prior to Abreu becoming an informant. Yet, the Government still did not contend that any of Abreu's actions at this earlier time made him responsible for any crime. *Cf. United States v. Dyer*, 910 F.2d 530, 533 (8th Cir. 1990) (government informant could be counted as a participant because he criminally participated in the drug conspiracy prior to becoming an informant).

As we explained in *Williams*, neither unethical conduct nor involvement with an extensive criminal organization suffices for the enhancement, absent criminal responsibility. 527 F.3d at 1249 (citing *Yates*, 990 F.2d at 1182). Without alleging, much less proving, that Abreu's conduct made him in any way criminally responsible, the Government provided the district court with no foundation upon which to consider Abreu a participant for purposes of § 3B1.1.

As a last-ditch argument on appeal, the Government concedes that if Abreu cannot be a participant for § 3B1.1 purposes, Defendant's conduct toward him still proves his organizational leadership "because they show his efforts to direct the conduct of another in order to prevent the detection of the smuggling operation." But that argument runs directly against *Martinez*'s requirement of "evidence that the defendant exerted some control, influence or decision-making authority *over another participant* in the criminal activity." *Martinez*, 584 F.3d at 1026 (emphasis added); *see also* U.S.S.G. § 3B1.1, comment. (n.2) ("the defendant must

20

have been the organizer, leader, manager, or supervisor *of one or more other participants*") (emphasis added).  Thus, that argument fails.

In summary, because no evidence was provided to support Defendant's leadership role with respect to the four crewmen and because Abreu cannot be considered a participant, we conclude that the district court erred in applying the § 3B1.1(a) enhancement to Defendant's offense level.  We therefore **VACATE** Defendant's sentence and **REMAND** to the district court for resentencing without the leadership enhancement.  *See United States v. Canty*, 570 F.3d 1251, 1257 (11th Cir. 2009) ("remand for further findings is inappropriate when the issue was before the court and the parties had an opportunity to introduce relevant evidence") (citing *United States v. Simons*, 206 F.3d 392, 399 n.11 (4th Cir. 2000).

## IV.    ACCEPTANCE OF RESPONSIBILITY ADJUSTMENT

### A.    Background

Defendant also challenges on appeal the district court's denial of a two-level downward adjustment for acceptance of responsibility.  The PSR had recommended against giving Defendant this adjustment, noting as its only ground the fact that Defendant "had not provided a statement for acceptance of responsibility."  At sentencing, Defendant reiterated his objection, and defense counsel explained that he had timely provided the probation officer with a two-page letter "specifically detailing everything [Defendant] did in connection with

21

his involvement in this case.  And I will submit to the Court that he was truthful in his statement as to what he did….”

In response, the Government argued that Defendant had not been truthful in his statement accepting responsibility and focused on the fact that Defendant "continues to minimize his involvement and roles…."  Defense counsel disagreed, setting out with specificity the ways in which Defendant's statement was truthful and the fact that Defendant had expressed his regret.[7]

At this point, the district court noted that it was unaware of any statement by Defendant accepting responsibility.  The probation officer explained that she had initially overlooked the statement when she wrote the PSR, but had later located the statement and referenced it in an addendum to the PSR.  The officer further indicated that in this addendum, she had recommended that the court grant the two-level reduction if it found Defendant's statement to be truthful.

The district court then proceeded to rule on Defendant's objection to the absence of a reduction for acceptance of responsibility.  The judge read verbatim several provisions of § 3E1.1, which addresses the acceptance provision.  He mentioned both note 3, which provides that significant evidence of acceptance of

---

[7] Defendant's written statement (1) admitted that he used Abreu to acquire motors for vessels used to import drugs; (2) admitted outfitting and communicating with the crew of the drug boats; (3) stated that he notified his attorneys that he wanted to cooperate with the Government as soon as he realized that the December boat would be intercepted by authorities; and (4) apologized for "having gotten involved with these people and with drugs."

responsibility can be found through a defendant's plea of guilty prior to trial, his truthful admission of the conduct supporting the offense of conviction, and the absence of a false denial of additional relevant conduct for which he is accountable.  The judge also referenced note 4, which provides that conduct resulting in an enhancement for obstruction of justice does not ordinarily indicate that a defendant has accepted responsibility for his criminal conduct, but that both the obstruction enhancement and the acceptance reduction may be given in an extraordinary case.  The court concluded by stating that it was satisfied based on the testimony presented at the hearing, as well as the offense conduct, that Defendant was not entitled to an adjustment for acceptance of responsibility.

After hearing from Defendant as to grounds for a variance, the court denied any variance and imposed a sentence of life imprisonment, which is what an offense level of 43 calls for.  Defendant objected to the court's finding of facts, specifically as to the role enhancement for leader or organizer; to the court's enhancement for obstruction of justice; to the court not giving Defendant a reduction for acceptance of responsibility; and finally to the court not varying downward because of Defendant's military service.

## B.    Discussion

In appealing the district court's denial of a reduction for acceptance of responsibility, Defendant argues that because it failed to read the two-page

23

statement in which the Defendant laid out his acceptance of responsibility, the district court procedurally erred. Because of this omission, Defendant argues, the district court could not have properly evaluated whether a reduction for acceptance was appropriate.

As noted, because the probation officer had inadvertently omitted the statement from the original PSR, the district court was unaware of this statement until defense counsel referred to it. Nevertheless, the court heard counsel's argument on this matter and Defendant was fully able to have his say during his allocution. And had counsel thought it crucial, he could have read verbatim the letter or requested the court to stop and read the letter before ruling. Accordingly, we reject Defendant's argument that the district court's failure to recess proceedings to read this statement constituted a procedural error that warrants reversal.

Nevertheless, given our earlier ruling that the district court erred in imposing a four-level enhancement based on Defendant's purported leadership role, we do remand to the court to consider again whether Defendant should receive a two-level downward adjustment for acceptance of responsibility. We find remand appropriate because the district court gave some indication that Defendant's perceived leadership role factored in the court's decision to deny Defendant a reduction for acceptance of responsibility, notwithstanding the latter's plea of

24

guilty.  Specifically, as noted, at the change-of-plea hearing, the court had emphasized to Defendant that his failure to admit at sentencing to this leadership role, should the Government be able to prove same, would put at risk any reduction for acceptance of responsibility.  Further, at sentencing, in deciding against awarding Defendant this reduction, the court again referenced a note to this Guideline provision indicating, in effect, that the false denial of relevant conduct for which a defendant is accountable may undermine evidence of that defendant's acceptance of responsibility.

It is unclear from the sentencing hearing if the district court's conclusion that an enhancement for leadership role was applicable affected the court's decision to deny Defendant a reduction for acceptance of responsibility.  Yet, to the extent that the court based its denial of the acceptance reduction on a conclusion that Defendant had falsely denied or frivolously contested the leadership enhancement, that inference is no longer tenable, given our ruling that the §3B1.1 leadership enhancement should not have been given.  And because Defendant must be resentenced now without application of that enhancement, the district court will have the opportunity to reconsider the appropriateness of a

25

§ 3E1.1 adjustment, taking that ruling and all other appropriate factors into account.[8]

## V.    CONCLUSION

We **AFFIRM** Defendant's conviction.  We, however, **VACATE** his sentence and **REMAND** for a new sentencing hearing at which Defendant shall be present.  At that resentencing hearing, the district court shall exclude from the Guidelines' calculation any aggravated role enhancement pursuant to U.S.S.G. § 3B1.1(a) and shall consider whether a reduction pursuant to § 3E1.1 should be applied, without any consideration of Defendant's purported leadership role or challenge to that role enhancement at his original sentencing hearing.

**AFFIRMED in part; REVERSED in part; and REMANDED.**

---

[8] Defendant did not appeal the district court's imposition of an enhancement for obstruction of justice, under § 3C1.1 enhancement.  Accordingly, that ruling constitutes the law of the case, and Defendant has waived his right to contest imposition of this adjustment at resentencing.  *See United States v. Escobar-Urrego*, 110 F.3d 1556, 1560 (11th Cir. 1997) (holding that where the defendant failed to appeal the district's calculation of his quantity of drugs, the law-of-the case doctrine barred him from challenging that finding at a subsequent sentencing proceeding on a different issue).  Therefore, the district court may take into account the imposition of the obstruction of justice enhancement when deciding whether an adjustment under § 3E1.1 should be given.