# United States Court of Appeals
## For the First Circuit

No. 16-1551

UNITED STATES OF AMERICA,

Appellee,

v.

JOSÉ R. DÍAZ-ROSADO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Torruella, Lipez, and Barron,
Circuit Judges.

Richard C. Klugh on brief for appellant.
John A. Mathews II, Assistant United States Attorney, Rosa Emilia Rodríguez-Vélez, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, on brief for appellee.

May 16, 2017

**BARRON**, **Circuit Judge**.  On August 15, 2013, José Díaz-Rosado ("Díaz") was indicted in the United States District Court for the Southern District of Florida for his role in planning and organizing a maritime smuggling operation involving over 1,000 kilograms of cocaine.  Five days later, Díaz was indicted again -- this time, in the United States District Court for the District of Puerto Rico -- for his role in planning and organizing a maritime smuggling operation involving over 1,000 kilograms of cocaine.  Díaz contends that the Double Jeopardy Clause of the United States Constitution bars his prosecution on the Puerto Rico charges because the Florida charges already encompass the conduct for which he was indicted in Puerto Rico.  For the reasons set forth below, we reject this challenge and affirm the decision of the District Court to deny Díaz's motion to dismiss the Puerto Rico indictment on double jeopardy grounds.

## I.

Because Díaz's double jeopardy challenge to the Puerto Rico indictment hinges in part on the procedural history of the Florida case, we first need to describe the two indictments and their subsequent travel in some detail.  We will then be well

positioned to explain why we are unpersuaded that the Puerto Rico indictment must be dismissed on double jeopardy grounds.

**A.**

On August 6, 2012, federal agents intercepted a vessel carrying approximately 1,032 kilograms of cocaine off the coast of Guayama, Puerto Rico.[1]  The vessel was registered to Díaz, who had rented a dock for it in Fajardo, Puerto Rico.  The government later determined that Díaz also hired the vessel's two-man crew: Jorge Suárez-Albelo and Joel Perpiña-Quiles.  Although Díaz was not on board at the time of its seizure, he and another individual were responsible for following behind the vessel in a separate boat.

Roughly five months later, on December 30, 2012, federal authorities intercepted a second vessel off the coast of St. Croix, United States Virgin Islands -- this one carrying approximately 1,157 kilograms of cocaine.  This vessel had a different two-man crew: José De León and Wilson Concepción.  Díaz had purchased this second vessel.  He also had directed an associate -- who later became a confidential source of the Broward County, Florida, Sheriff's Office -- to purchase two outboard motors for it.

The December seizure formed the basis for a one-count indictment filed against Díaz in the United States District Court

---

[1] We recite these uncontested facts as laid out in the Magistrate Judge's report and recommendation, the pre-sentence report accompanying Díaz's Florida guilty plea, and the prosecutor's statements at Díaz's change-of-plea hearing.

for the Southern District of Florida on August 15, 2013. Díaz was charged with one count of conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(ii). Díaz pleaded guilty several months later.

During sentencing, the Florida district court relied on both the August and December seizures as evidence that Díaz was responsible for trafficking 2,189 kilograms of cocaine. The Florida district court also applied a four-level sentencing enhancement under § 3B1.1(a) of the United States Sentencing Guidelines for acting as the organizer or leader of a criminal activity involving five or more participants, and a two-level sentencing enhancement under § 3C1.1 of the Guidelines for obstruction of justice for encouraging the confidential source to lie to government investigators. Díaz was initially sentenced to life in prison.

Five days after Díaz was indicted in Florida, the government filed a two-count indictment against him in the United States District Court for the District of Puerto Rico. Based on the August seizure, the Puerto Rico indictment charged Díaz with one count of conspiracy to import more than five kilograms of cocaine into the United States, in violation of 21 U.S.C. §§ 952, 960, and 963, and one count of conspiracy to possess with intent

to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(ii).

Díaz moved to dismiss the Puerto Rico indictment the same day he entered his plea of guilty in the Florida case. Díaz contended that the conduct charged in the Puerto Rico indictment -- in particular, Díaz's participation in the events leading up to the August seizure -- had already been charged in the Florida case and thus that dismissal of the Puerto Rico indictment was required by the Fifth Amendment's Double Jeopardy Clause.

The District Court did not rule on that motion right away. Instead, the District Court held that motion in abeyance pending the resolution of the Florida proceedings.

With the Puerto Rico case on hold, Díaz pursued an appeal of his sentence in the Florida proceedings to the Eleventh Circuit. In that appeal, he contended, among other things, that the Florida district court erred in applying the four-level leadership enhancement, and in failing to apply a two-level downward adjustment for acceptance of responsibility, pursuant to § 3E1.1 of the Guidelines. United States v. Díaz-Rosado, 615 Fed. Appx. 569, 572 (11th Cir. 2015).

On June 25, 2015, the Eleventh Circuit vacated and remanded the sentence. Id. at 569. That court concluded, first, that "no evidence was provided to support [Díaz's] leadership role with respect to the four crewmen" -- Suárez, Perpiña, De León, and

- 5 -

Concepción -- and second, that the confidential source could not be "considered a participant."  Id. at 579.  On this basis, the Eleventh Circuit then remanded the case to the Florida district court for reconsideration of its decision to apply the leadership enhancement, directing the district court also to reconsider its decision not to apply the downward adjustment for acceptance of responsibility.  Id. at 581.  Upon remand, Díaz was sentenced on February 18, 2016 to 240 months of imprisonment.[2]

**B.**

Several days later, the proceedings in the federal district court in Puerto Rico resumed.  The District Court referred the motion to dismiss the indictment to a magistrate judge.  The Magistrate Judge issued a report and recommendation recommending

---

[2] The Eleventh Circuit upheld the Florida district court in two other respects.  First, Díaz-Rosado held that the District Court did not plainly err in finding that there was a factual basis for the plea.  615 Fed. Appx. at 573-74.  Second, Díaz-Rosado held that the Florida district court adequately explained the charges against Díaz and thus did not plainly err during the plea colloquy. Id. at 574-75.  On remand, the parties agreed that Díaz was eligible for a two-level downward adjustment pursuant to the so-called "safety-valve" provisions laid out in 18 U.S.C. § 3553(f), and §§ 2D1.1(b)(17) and 5C1.2 of the Guidelines.  In sentencing Díaz a second time, the Florida district court did not apply the four-level leadership enhancement, nor did it apply the two-level downward adjustment for acceptance of responsibility.

that the District Court deny Díaz's motion to dismiss on April 5, 2016.

The Magistrate Judge found as follows.  With respect to Count One of the Puerto Rico indictment, the Magistrate Judge first noted that the offense charged therein was not an offense charged in the Florida case.  Accordingly, citing United States v. Ortiz-Alarcon, 917 F.2d 651, 652 (1st Cir. 1990), the Magistrate Judge denied Díaz's motion to dismiss Count One.  The Magistrate Judge explained that the elements of the statute Díaz was charged with violating in that count, 18 U.S.C. § 952, are different from the elements of the statute Díaz was charged with violating in the one-count Florida case and therefore his prosecution on Count One in the Puerto Rico case presented no double jeopardy problem.

With respect to Count Two of the Puerto Rico indictment, the Magistrate Judge held that the conspiracy for which Díaz was charged in the Puerto Rico indictment was a separate one from the conspiracy for which he was charged in the Florida district court. Applying the five-factor test we laid out in United States v. Laguna-Estela, 394 F.3d 54, 56 (1st Cir. 2005), the Magistrate Judge concluded that three of the Laguna-Estela factors -- the time of the activities, the persons involved, and the evidence that would be adduced at trial -- favored the government.

First, as to timing, the Magistrate Judge noted that the conspiracy charged in Puerto Rico "ended in September 2012," and

- 7 -

therefore "covers a different time period than the conspiracy alleged in the Florida indictment, which began in October 2012." Second, as to personnel, the Magistrate Judge emphasized that the August conspiracy -- the one charged in Puerto Rico -- involved Suárez and Perpiña, whereas the December conspiracy -- the one charged in Florida -- involved De León and Concepción. Finally, as to evidence, the Magistrate Judge noted that there "were two different drug shipments, involving different time periods and persons," which "supports a finding that distinct evidence would have to be adduced in order to establish each of the two conspiracies." "What is more," the Magistrate Judge held, "because none of the individuals in the December 2012 conspiracy (apart from Díaz) were involved in the alleged August 2012 conspiracy, the government may prove an agreement -- the essential component of a conspiracy -- between Díaz and the individuals in the August 2012 voyage without resorting to proof of an agreement between Díaz and the individuals involved in the December 2012 voyage."

The Magistrate Judge, however, held that the remaining two Laguna-Estela factors -- the places involved and the fact that the two statutory provisions under which Díaz was charged were the same -- did weigh in favor of Díaz. The Magistrate Judge noted that "either the 'Dominican Republic or Puerto Rico' were the 'final destination' for the shipments" charged in both indictments. (citation omitted). And, the Magistrate Judge also

- 8 -

noted that Count Two of the Puerto Rico indictment and the one count of the Florida indictment both "alleged violations of the same statutory provisions," thus tipping the fifth Laguna-Estela factor in Díaz's direction. But, after weighing these five factors, the Magistrate Judge ultimately concluded that the conspiracies charged in the two indictments were separate ones insofar as the conduct charged in the two indictments involved distinct time periods, personnel, and evidence, and recommended that the District Court deny Díaz's motion to dismiss Count Two of the Puerto Rico indictment on double jeopardy grounds.

The Magistrate Judge's report and recommendation informed Díaz that he had fourteen days to file objections. The report and recommendation also notified Díaz that "[f]ailure to file timely and specific objections . . . [would constitute] a waiver of the right to appellate review." Díaz, however, did not file any objections to the report and recommendation. Accordingly, on April 26, 2016, the District Court adopted the Magistrate Judge's report and recommendation that Díaz's motion to dismiss be denied and directed that the parties proceed with trial preparation.

Díaz then filed this timely interlocutory appeal. We agree with the parties that we have jurisdiction to hear the appeal pursuant to the Supreme Court's decision in Abney v. United States, 431 U.S. 651, 661-62 (1977), which made clear that a "double

jeopardy challenge to [an] indictment must be reviewable" before the defendant is to stand trial on that indictment. United States v. Toribio-Lugo, 376 F.3d 33, 37 (1st Cir. 2004) (noting that, while ordinarily a "defendant cannot pursue an immediate appeal from an interlocutory order in a criminal case," defendants may nevertheless "immediate[ly] appeal[] from denials of a motion to dismiss" if the appeal is "premised on colorable double jeopardy grounds").

## II.

As this case comes to us, it appears that Díaz waived his right to bring the challenge he now advances by failing to file objections to the Magistrate Judge's report and recommendation. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008) (holding that the defendant "waived his right to . . . appeal because he failed to object to the recommendation of the magistrate's report"); see also Thomas v. Arn, 474 U.S. 140, 142 (1985) ("The question presented is whether a court of appeals may exercise its supervisory powers to establish a rule that the failure to file objections to the magistrate's report waives the right to appeal the district court's judgment.  We hold that it may."); Davet v. Maccarone, 973 F.2d 22, 31 (1st Cir. 1992) ("Failure to raise objections to the Report and Recommendation

- 10 -

waives the party's right to review in the district court and those claims not preserved by such objection are precluded on appeal.").

Díaz contends that his double jeopardy claim is exempt from the ordinary application of these waiver rules because his guilty plea in the Florida case does not now foreclose him from bringing this double jeopardy challenge. It is by no means clear, however, that, under United States v. Broce, 488 U.S. 563, 571 (1989), Díaz's failure to object to the Magistrate Judge's report and recommendation did not thereby waive his right to bring this challenge. See id. (holding that "when [the defendants] pleaded guilty to two charges of conspiracy on the explicit premise of two agreements which started at different times and embraced separate objectives, they conceded guilt to two separate offenses," and therefore could not subsequently "challenge the theory of the indictments and . . . attempt to show the existence of only one conspiracy"); see also United States v. Stefanidakis, 678 F.3d 99-100 (1st Cir. 2012). Nevertheless, even assuming that Díaz has not waived his right to bring this challenge, we conclude, as we now explain, that this interlocutory appeal fails on the merits.

**A.**

Díaz purports to challenge both counts of the Puerto Rico indictment on double jeopardy grounds. But, as Díaz does not dispute the District Court's conclusion that Count One of the Puerto Rico indictment did not present a double jeopardy problem

- 11 -

because it charged an offense that was not charged in the Florida case, we affirm and proceed to consider his challenge regarding Count Two of the Puerto Rico indictment.[3]

The government contends that we review the District Court's ruling under Laguna-Estela for abuse of discretion. See Toribio-Lugo, 375 F.3d at 38 ("The baseline standard of review applicable to a denial of a motion to dismiss on double jeopardy grounds following the declaration of a mistrial is abuse of discretion."). Laguna-Estela itself, however, seems to have applied a clear-error standard of review, 394 F.3d at 57. That case notwithstanding, we held in United States v. Fornia-Castillo, 408 F.3d 52, 68 (1st Cir. 2005) -- decided several months afterwards -- that "[t]he availability of double jeopardy protection is a constitutional question reviewable de novo." Here, because our conclusion holds irrespective of the standard of review, rather than choose among the various standards, we apply the more defendant-friendly standard of de novo review that Díaz contends is applicable. For even on de novo review, we disagree with Díaz that the District Court's denial of Díaz's motion to dismiss must be reversed under Laguna-Estela.

---

[3] Because the District Court adopted the unobjected-to Magistrate Judge's report and recommendation, our references to the District Court's reasoning and conclusions encompass the Magistrate Judge's report and recommendation.

Díaz first contends that there is a substantial overlap between the evidence at issue in the Florida case and the evidence that would be adduced at trial here, given the "obvious relatedness of the conduct."  For that reason, he argues, the fourth Laguna-Estela factor -- whether "the same evidence [would] be used to prove the two conspiracies," 394 F.3d at 57 -- favors him, rather than the government, as the District Court concluded.  But, Díaz points to no specific facts in the record before the District Court that suggest that the District Court incorrectly applied or weighed this fourth Laguna-Estela factor.  And while Díaz also argues that unidentified "principal players" in the two seizures at issue were the same -- and thus that the second, personnel-based Laguna-Estela factor also favors him -- that assertion, without more, is insufficient to meet his burden of "presenting evidence to establish a prima facie nonfrivolous double jeopardy claim," Laguna-Estela, 394 F.3d at 56 (quoting United States v. Booth, 673 F.2d 27, 30-31 (1st Cir. 1982)), even if we assume that Díaz preserved this argument below.[4]  Accordingly, Díaz provides no

----

[4] Below, Díaz stated the following: "The facts of the Puerto Rico case occur right in the middle of the time frame of the conspiracy of the Southern District case, refer to the same alleged conduct . . . and occurred in Puerto Rico.  The facts coincide in place, time, geographic area and factual description."  He thus made no reference to any high-level individuals common to both conspiracies.

- 13 -

basis on which the District Court's ruling may be reversed under the framework we established in <u>Laguna-Estela</u>.

**B.**

Díaz does make a number of other arguments in support of his contention that the District Court erroneously denied his motion to dismiss.  None have merit.

Díaz argues that, during the sentencing phase of the Florida proceedings, the government itself relied on evidence from the August seizure (the one charged in the Puerto Rico indictment) to demonstrate his responsibility for the December seizure (the one charged in the Florida case), thus making clear that Díaz participated in only one "overarching conspiracy."  But, assuming favorably to Díaz that our review is de novo, we disagree.

The Supreme Court has explicitly rejected the argument "that double jeopardy principles bar a later prosecution or punishment for criminal activity where that activity has been considered at sentencing for a separate crime."  <u>Witte</u> v. <u>United States</u>, 515 U.S. 389, 398 (1995).  Thus, the fact that the government presented evidence to the Florida district court concerning the seizure for which Díaz was charged in this case does not suffice to show that the crimes charged in the two cases are the same for double jeopardy purposes.

Díaz also contends that the motion to dismiss must be granted based on two aspects of the record that he identifies for

the first time on appeal.  Specifically, he contends that: (1) the Florida and Puerto Rico indictments were coordinated, and therefore represented the culmination of a "joint investigation" between law enforcement authorities in Florida and Puerto Rico and (2) the government opposed Díaz's request that his defense in the Florida case be handled by a former federal prosecutor in Puerto Rico because the Puerto Rico case and the Florida case were "essentially the same."  But, Díaz made no reference to these facts in his motion to dismiss before the Magistrate Judge, and he did not object before the District Court to the Magistrate Judge's report and recommendation.  Thus, our review is, at best, for plain error.  See United States v. Catalán-Roman, 585 F.3d 453, 472 (1st Cir. 2009), as amended (Dec. 23, 2009) (holding that a double jeopardy claim not raised below is subject to plain error review).  Díaz must therefore show that "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings."  Stefanidakis, 678 F.3d at 99 (quoting United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001)).

        We are, however, hard pressed to see how, taking Díaz's characterization of the record as true, the fact that the two prosecutions were similar enough to be handled by the same team of prosecutors in and of itself shows that the two conspiracies at

issue here are, in fact, one conspiracy under the Double Jeopardy Clause.  And Díaz offers no basis on which to conclude that the District Court's contrary ruling, notwithstanding these facts, was an error, let alone a clear or obvious one.  Thus, we reject this challenge, too.

Finally, Díaz points to the Eleventh Circuit's decision vacating and remanding his sentence in the Florida case as one that requires us to dismiss the indictment on double jeopardy grounds.  But the Eleventh Circuit was plainly not, in so ruling, passing on whether the Puerto Rico and Florida cases involved the same conspiracy or different ones.  As we have already noted, the Eleventh Circuit merely overruled the Florida district court's decision to apply a four-level leadership enhancement to Díaz for the conspiracy charged in that case (whatever its scope), and instructed the lower court to reconsider its decision not to apply a two-level downward adjustment for acceptance of responsibility. Díaz-Rosado, 615 Fed. Appx. at 571 (finding "no merit in [Díaz's] challenge to his conviction," and "revers[ing] his sentence and remand[ing] for resentencing").  For this reason, Díaz's final challenge must also be rejected.

## III.

We **affirm** the judgment of the District Court.